In the Matter of the Application of the PEOPLE OF THE STATE OF NEW YORK, by FRANCIS R. STODDARD, JR., as Superintendent of Insurance, for an Order to Take Possession of the Property and Assets of NORSKE LLOYD INSURANCE COMPANY, LTD.

NORWEGIAN RECEIVER OF NORSKE LLOYD INSURANCE COMPANY, LTD., et al., Appellants; STANDARD MARINE INSURANCE COMPANY et al., Respondents.

Corporations — insurance companies — insolvency — debtor and creditor — appeal — distribution of assets of insolvent foreign insurance company by Superintendent of Insurance — when Insurance Law does not classify in different degrees those entitled to protection decision that certain claims should be subordinated to others a holding that such claimants are not entitled to protection at all — question of interpretation not presented to Court of Appeals even though included in questions certified — rights of insurance company governed by law in force when securities deposited — deposit made for protection of " policyholders in the United States "— individuals who reside in United States having policies of company issued in foreign country not included — amendments to Insurance Law long after deposits were made not applicable — application of funds in hands of Superintendent to payment in full of local creditors before transmission to domiciliary receiver not authorized — Superintendent an ancillary receiver and should act in aid of primary receivership — surplus funds transmitted to primary receiver on condition that domestic creditors be allowed to prove their claims in this country.

1. Inasmuch as the Insurance Law (Cons. Laws, ch. 28), which requires a foreign insurance company to make a deposit of securities for the protection of policyholders in the United States, does not

classify in different degree of preference those who are entitled to its protection and claimants are entitled to equal protection of the statute or to none at all, where the courts, in considering questions arising in connection with the distribution of assets of an insolvent foreign insurance company, in possession of the Superintendent of Insurance, have decided that certain claimants should be first paid out of the proceeds of the property deposited and that creditors having claims upon policies issued abroad should be subordinated thereto and included in a second class payable only out of any surplus left after payment of the first class, they necessarily have held that such second class were not protected by the statute and were not entitled to share in the distribution made thereunder and where none of such creditors have taken any appeal from the orders which were made thus interpreting the statute, it is questionable whether such interpretation is presented to this court for review even though included in questions certified by the Appellate Division.

2. The various amendments to the statute enacted since the time the deposits in question were made have not substantially changed its meaning in respect of the question submitted for review. If they had the rights of the insurance company would be governed by the provisions in force when its securities were deposited.

3. In considering the specific question whether the words " policyholders in the United States " or " within the United States " include individuals who reside in the United States having policies issued elsewhere or only indicate those persons who, being citizens or residents of the United States, old policies issued in that country, the Insurance Law as now written and as an entirety i dicates a purpose and policy in dealing with foreign insurance c mpanies doing business in this country which are so definite and plain that they fix upon the words under consideration an interpretation which cannot fairly be avoided. The Legislature in allowing these foreign companies to do business in this State and country intended to treat the domestic agency largely as a complete and separate organization, to place it on a parity with domestic corporations, to supervise and regulate it as such and to require it by the deposit of prescribed assets to set up within this country a capital corresponding to that of domestic corporations and which should be security for business transacted by it here and not elsewhere. Such deposit constitutes its capital and it is so denominated in the words of the statute. It corresponds to the capital of domestic companies engaged in doing domestic business and since it is required as a condition of doing business here it is the fair presumption that the Legislature intended to adjust the amount of this capital to domestic business and to the risks incurred in issuing policies here and not to those which might be incurred by

# 150 MATTER OF PEOPLE (NORSKE LLOYD INS. CO.).

issuing policies abroad even though in some cases to persons who were residents of this country.

4. A suggestion that the Legislature by amendment in the years 1920 and 1923 of section 45 of the Insurance Law has expressed its intention that some other interpretation should be placed upon the statute, cannot be sustained. These amendments were not intended to affect the provisions of the Insurance Law relating to the question under discussion and if they were so intended would not affect the deposits involved in these proceedings which were made long before the amendments in question and which would be governed by the law prevailing when and in accordance with which they were made.

5. There is no principle of equity, comity or public policy which authorizes the application of the funds in the hands of the Superintendent of Insurance to payment in full of local creditors before transmission of any surplus to the primary or domiciliary receiver, which, under the circumstances of this case, is recognized by our courts. The Superintendent is an ancillary receiver who has come into possession of the insolvent's property before any lien was acquired thereon by creditors, and he should act in aid of the primary receivership. The ordinary rule of distribution of the assets of an insolvent is equality amongst creditors of the same class and this rule requires transmission of the funds in the hands of the Superintendent as ancillary receiver and not subject to any particular claim or lien to the primary receiver for distribution *pro rata* amongst the creditors of the insurance company. There is, however, another rule to the effect that domestic assets will not as against domestic creditors be transmitted to a foreign receiver or liquidator if there is any danger that the latter's distribution thereof will be made in a manner unfair to the domestic creditors, and in view of the fact that the claims against the insurance company are so small that they will scarcely bear the expense of proving them in a foreign country it will be proper for our courts to provide as a condition of transmission of the funds held·by the Superintendent of Insurance that domestic creditors shall be allowed in some proper manner to prove their claims in this country as against and for the purpose of distribution of assets by the foreign receiver. (*People* v. *Granite State Provident Assn.*, 161 N. Y. 492; *Russian Reinsurance Co.* v. *Stoddard*, 240 N. Y. 149; *First Russian Ins. Co.* v. *Beha*, 240 N. Y. 601; *Andre* v. *Beha*, 240 N. Y. 605; *Willitts* v. *Waite*, 25 N. Y. 577, distinguished; *Matter of People* [*City Equitable Fire Ins. Co.*], 238 N. Y. 147, followed; *Frowert* v. *Blank*, 205 Penn. St. 299, 304, disapproved.)

*Matter of People* ( *Norske Lloyd Ins. Co.*), 214 App. Div. 777, modified.

(Argued January 11, 1926; decided February 24, 1926.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the first judicial department, entered June 19, 1925, which unanimously affirmed an order of Special Term confirming in part a report of the Superintendent of Insurance of the State of New York and directing distribution of the assets of an insolvent foreign insurance company doing business in this State.

The following questions were certified:

" 1. Did the Supreme Court of the State of New York have jurisdiction in the above-entitled proceeding to make the order appealed from* authorizing, directing and permitting the New York liquidator to pay from the United States assets of the Norske Lloyd Insurance Company, Ltd., the allowed and approved claims of claimants described in the order appealed from as claimants of the second class?

" 2. Are the surplus assets in the United States that should be transmitted to the Norwegian liquidator, in the case at bar, those assets of the Norske Lloyd Insurance Company, Ltd., which remain after payment of the New York liquidator of (1) the expenses of the New York liquidation, and (2) all allowed and approved claims, in full with interest of claimants described in the order appealed from as claimants of the first and second classes?"

*Charles E. Hughes, Clarence B. Smith* and *Wendell P. Barker* for appellants.   The Insurance Law creates a trust which requires the Superintendent of Insurance to remit the balance abroad as soon as the creditors protected by the statute are paid. · (*Matter of People [City Equitable Fire Ins. Co.]*, 238 N. Y. 147.)   Equitable principles require that the surplus assets after payment of the claims of class one shall be remitted to the foreign liquidator.  (*Matter of People [City Equitable Fire Insurance Co., Ltd.]*, 238 N. Y. 147; *People* v. *Granite State Provident Assn.*, 161 N. Y. 492; *Mitchell* v. *Banco*

*de Londres y Mexico,* 192 App. Div. 720.) The claimants embraced within class two under the order appealed from are not within the class protected by the statute. (*Matter of Throckmorton* v. *Norske Lloyd Ins. Co., Ltd.,* 210 App. Div. 848.) An insurance company authorized to do business here is for many purposes treated as a domestic company. The authorities on this point are clear. (*Comey* v. *United Surety Co.,* 217 N. Y. 268; *Lockwood* v. *U. S. Steel Corp.,* 209 N. Y. 375; *Martine* v. *International Life Insurance Society,* 53 N. Y. 339.) The Insurance Law, considered section by section, shows a purpose to protect the American branch. (*Lancashire Ins. Co.* v. *Maxwell,* 131 N. Y. 286.)

*Alfred C. Bennett* and *Clarence C. Fowler* for Superintendent of Insurance, respondent. The decisions and precedents in this State and in the United States are in support of that portion of the order appealed from directing payment in full to creditors of the second class after creditors of the first class are paid in full. (*Andre* v. *Beha,* 211 App. Div. 380; 240 N. Y. 605; *Russian Reinsurance Co.* v. *Stoddard,* 240 N. Y. 149; *First Russian Ins. Co.* v. *Beha,* 212 App. Div. 841; 240 N. Y. 601; *Mabon* v. *Ongley Electric Co.,* 156 N. Y. 196; *Willitts* v. *Waite,* 25 N. Y. 577; *Comey* v. *United Surety Co.,* 217 N. Y. 268; *James* v. *Second Russian Insurance Co.,* 239 N. Y. 248; *N. Y. Life Ins. Co.* v. *Statham,* 93 U. S. 24; *Mygatt* v. *N. Y. P. Ins. Co.,* 21 N. Y. 53; 1 Joyce on Ins. 114; *Booth* v. *Clark,* 17 How. [U. S.] 322; *Runk* v. *St. John,* 29 Barb. 585; *Dike* v. *Erie Railway,* 45 N. Y. 113, 118; *Kelly* v. *Crapo,* 45 N. Y. 86.)

*Oscar R. Houston* and *M. P. Detels* for Standard Marine Insurance Company et al., respondents. An insurance company becomes a resident of a State in which it is licensed to transact business. (*German Bank* v. *American Fire Ins. Co.,* 83 Ia. 491; *Martine* v. *International Life*

*Ins. Society*, 53 N. Y. 339; *Morgan* v. *Mutual Benefit Life Ins. Co.*, 189 N. Y. 447; *Matter of Wilcox*, 123 App. Div. 86; *Lockwood* v. *U. S. Steel Corp.*, 209 N. Y. 375; *Comey* v. *United Surety Co.*, 217 N. Y. 268; *McClement* v. *Sup. Court, Ind. Order Foresters*, 88 Misc. Rep. 475.) United States branches of alien insurance companies should participate in the United States liquidation of the Norske Lloyd. (*Martine* v. *International L. Ins. Co.*, 53 N. Y. 339; *Morgan* v. *M. B. L. Ins. Co.*, 189 N. Y. 447; *Comey* v. *United Surety Co.*, 217 N. Y. 268.)

*William H. Hotchkiss* for Staples Transportation Company et al., respondents. The order appealed from was right so far as it directed payment of approved claims of the second class out of the funds in the hands of the liquidator charged with the public and private trusts. (*Ruggles* v. *Chapman*, 59 N. Y. 163; *Lancashire* v. *Maxwell*, 131 N. Y. 286; *Blake* v. *McClurg*, 172 U. S. 239.) The court at Special Term had jurisdiction to direct distribution of the whole fund and to hold that part of the fund which was not charged with the trusts until the rights of local creditors were determined. (*People* v. *Granite State Provident Assn.*, 41 App. Div. 257; 161 N. Y. 492; *Willitts* v. *Waite*, 25 N. Y. 577.)

*Louis J. Wolff* and *David Rumsey* for United States policyholders and creditors, respondents. There is neither reason nor authority for classifying the claims of United States policyholders and creditors upon the basis of the origin of such claims. (*Seaver* v. *Lindsay Light Co.*, 233 N. Y. 273; *Standard Casing Co.* v. *California Casing Co.*, 233 N. Y. 413; *Dwane* v. *Weil*, 199 App. Div. 719; 235 N. Y. 527; *Matter of People* [*City Equitable Fire Insurance Co., Ltd.*], 238 N. Y. 147; *Willitts* v. *Waite,* 25 N. Y. 577.)

*Frank A. Bernero* for J. Aron & Co. et al., respondents. The assets of the Norske Lloyd Insurance Com-

pany, Ltd., were intended by law to be applied to the payment of claims of United States policyholders and creditors, including claims of United States creditors based on policies issued abroad. Both the trust fund and the so-called free assets are subject to the claims of policyholders and creditors in the United States. (*Matter of People [City Equitable Fire Ins. Co.]*, 238 N. Y. 147.)

*Willard U. Taylor* and *Irving Mariash* for American claimants, respondents. The Insurance Law specifically provides for the payment of " all policyholders and creditors within the United States " regardless of where the policy was written. (Cons. Laws, ch. 28, §§ 13, 27, 28, 63.) The Insurance Law specifically provides that the distribution of the local assets of a foreign insurance company shall follow the mode of distribution in an ordinary ancillary receivership. Local creditors are to be paid before remitting anything to the domiciliary or foreign liquidators. (1 Wharton on Conflict of Laws [3d ed.], 837; 1 Clark on Receivers, 496; White on Corporations [9th ed.], 491; 5 Cook on Corporations [8th ed.], 3944.)

*Noah A. Stancliffe* and *Charles J. Hardy, Jr.*, for Woodin Transportation Company, respondent.

HISCOCK, Ch. J. We are called on to decide important questions arising in connection with the distribution of assets of an insolvent foreign insurance company now in the possession of the Superintendent of Insurance in accordance with the Insurance Law (Cons. Laws, ch. 28). The Norske Lloyd Insurance Company, Limited, was organized under the laws of Norway. Several years ago it undertook to do business in this State and in accordance with the provisions of our statute it made a deposit of securities with the Superintendent of Insurance and also with the

1926.]              Opinion, per Hiscock, Ch. J.     [242 N. Y. 148]

Guaranty Trust Company under deeds of trust.   Sub-
sequently it became insolvent and a domiciliary or
primary receiver was appointed in Norway and a liqui-
dator in England and, in proceedings duly authorized
by our statute, the Superintendent of Insurance took
possession of the securities deposited as hereinbefore
stated, of securities deposited in trust with the authorities
of the State of Ohio and of all other assets found within
our jurisdiction which he thereafter held in accordance
with the definition and provisions of the statute as
an ancillary receiver of a foreign corporation.   In due
season he presented to the Supreme Court a report
showing the amount of assets which had thus come into
his possession and so far as ascertained the amount of
claims based on policies issued by said Insurance Com-
pany. These claims were allocated to three general
classes.   They were those based, *first*, upon policies
issued to residents or citizens by agencies of said Insurance
Company doing business in this country; *second*, upon
policies issued by said Insurance Company outside of
this country to persons residing within this country;
and *third*, upon policies issued to non-residents of this
country by foreign agencies of the Insurance Company.
His report recommended that the property deposited
with the Insurance Department or in trust with the
Trust Company should be applied to the payment of
all claims included in the first class and concluded that
creditors upon policies issued without the United States
were not entitled to be paid from the assets in his
possession, leading to the inference that, in his opinion,
any surplus of assets or proceeds thereof remaining after
payment of creditors of the first class should be trans-
mitted to the domiciliary receiver in Norway.   The
courts below have approved this report and recom-
mendation to the extent of providing that the proceeds
of the deposited funds and assets should be first applied
to the payment of all claims based upon policies issued

in this country by agencies of said Insurance Company. They then have gone farther, however, and provided that any surplus of assets after such payments should be applied to the satisfaction of claims held by citizens and residents of this country, based upon policies issued by the company through foreign agencies. The third class of creditors was eliminated from consideration in the distribution of these assets.

The Norwegian or domiciliary receiver and the British liquidator have appealed from this disposition and have thereby presented the question whether the assets in the hands of the Superintendent of Insurance should be applied otherwise than in accordance with the statute providing for deposits with the Insurance Department and in trust hereinbefore referred to and which they claim permits the application of such assets only to the satisfaction of claims on policies issued by agencies doing business within this country and excludes claims upon policies issued abroad. They do not urge that there are any persons or corporations included in the first class who, although holding policies issued in this country, ought to be excluded under the statute because of non-residence. The respondents not only claim that the statute authorizes satisfaction of claims held by persons residing in or citizens of this country upon policies issued outside of it, but also insist that under general principles of equity and public policy it is the duty of the Superintendent having these assets in his possession to apply them to the satisfaction of claims of domestic creditors.

While the questions certified to us by the Appellate Division are in terms broad enough to include an interpretation of the statute under the opposing contentions thus made, we nevertheless have serious doubts whether such interpretation is before us. If the statute is to be construed as including residents and citizens of this country having claims upon policies issued abroad they could not have been placed in a second class by the

1926.] Opinion, per HISCOCK, Ch. J. [242 N. Y. 148]

orders before us. The statute does not classify in different degrees of preference those who are entitled to its protection. They are all in the same class; claimants are entitled to equal protection of the statute or to none at all and when, therefore, the courts decided that certain claimants should be first paid out of the proceeds of the property deposited and that creditors having claims upon policies issued abroad should be subordinated thereto and included in a second class payable only out of any surplus left after payment of the first class, they seem to us necessarily to have held that such second class were not protected by the statute and were not entitled to share in the distribution made thereunder and none of such creditors have taken any appeal from the orders which were made thus interpreting the statute. Since, however, all of the counsel have argued the interpretation of the statute and since possibly there may be some aspect of the proceedings not made plain to us which renders its construction desirable, we shall consider its meaning.

Various amendments have been enacted of the statute as it stood at the time the deposits in question were made. We do not think that any of these substantially change its meaning in respect of the question under review. If they did the rights of the Insurance Company would be governed by the provisions in force when its securities were deposited.

The crucial words of the provisions which fix the rights of policyholders are few in number. Originally they were to the effect that the securities deposited with the Insurance Department or in trust with the Trust Company should be " for the benefit of the policyholders in any of such states or the United States " or " for the general benefit and security of all its policyholders in the United States." Some of these provisions have now been amended so as to provide that the deposits shall be held for the protection of " policyholders *and creditors* within

the United States " but we do not regard these amendments as changing the meaning of the statute for in this case, at least, the creditors are such because policyholders. The deeds of trust executed by this particular Insurance Company after referring to the provisions of section 27 of the statute and stating that they are executed to the end that the statute might be fully complied with, provide that the trustee shall hold the deposited property for the purpose of paying " all lawful and valid claims or demands of policyholders or creditors in the United States." Of course the meaning of the language used in these deeds is to be interpreted in harmony with the language of the statute which was being complied with. The specific question, therefore, is whether the words " policyholders in the United States " or " within the United States " include individuals who reside in the United States having policies issued elsewhere or only indicate those persons who, being citizens or residents of the United States, hold policies issued in that country. Stated broadly in another form the question is whether the qualifying words " policyholders in the United States " refer to the origin of the policy and, therefore, are intended to protect our citizens or residents doing business in this country or whether these words are intended also to protect those who for any reason go abroad to procure their insurance.

We are referred to various prior provisions and amendments of our Insurance Law and to various reports of Superintendents of Insurance and opinions of Attorneys-General which, it is argued, point to an interpretation to be placed upon these words in favor of the respondents. Possibly under other conditions some inferences might be drawn from them which would be influential. But here, in our opinion, the Insurance Law as now written and as an entirety indicates a purpose and policy in dealing with foreign insurance companies doing business in this country which are so definite and plain that they fix

upon the words under consideration an interpretation which cannot fairly be avoided. We think that the Legislature in allowing these foreign companies to do business in this State and country intended to treat the domestic agency largely as a complete and separate organization, to place it on a parity with domestic corporations, to supervise and regulate it as such and to require it by the deposit of prescribed assets to set up within this country a capital corresponding to that of domestic corporations and which should be security for business transacted by it here and not elsewhere. It is of course impractical to support this view by quotation of all of the provisions of the statute, but reference may be made to some which especially seem to make it clear that such was the purpose of the Legislature.

The deposit which a foreign company is required to make here obviously constitutes its capital and it is so denominated in the words of the statute. It corresponds to the capital of domestic companies engaged in doing domestic business and since it is required as a condition of doing business here it is the fair presumption that the Legislature intended to adjust the amount of this capital to domestic business and to the risks incurred in issuing policies here and not to those which might be incurred by issuing policies abroad even though in some cases to persons who were residents of this country. This presumption is sustained and emphasized by various significant provisions relating to such capital. It is to consist of the deposits required by section 27 plus certain other enumerated assets " after taking from such aggregate value the same deductions for *losses, debts and liabilities in this and the other states of the United States and for premiums upon risks therein* not yet expired as is authorized or required by the laws of this State or the regulation of its insurance department with respect to fire insurance companies organized under the laws of this State," and the provision for revocation of a certificate

of authority issued to a foreign corporation is based upon the fact that its capital stock thus computed is impaired. Reports and advertisements made and issued by these foreign companies as required until recent amendments hereinafter to be considered, were governed by this same principle of domestic business, domestic assets and domestic policies and liabilities. The report made to the Superintendent of Insurance " shall only contain a statement of the business done and assets held by or for it within the United States for the protection of all policyholders residing within the United States and shall *not* contain any statement in regard to its assets and *business elsewhere.*" Advertisements, circulars, etc., are permitted to " exhibit as capital and as assets only the capital and assets held by its United States branch, the liabilities, including therein the premium and loss reserves required by law, and the amount of net surplus of assets over all liabilities actually available for the payment of its losses and claims and held for the protection of its policyholders in the United States." The limitation upon risks to be assumed and which in its amended form seems to apply to foreign as well as domestic corporations naturally again suggests domestic business as the subject of consideration and regulation for there would be such practical difficulties in the way of regulating the amount of foreign risks, written for instance in Norway, and in detecting violations, that it is not to be assumed that such supervision was contemplated. The provision for examination is the same as that provided for domestic corporations and naturally it assimilates itself to the theory that the Superintendent of Insurance was expected to probe conditions as tested by the relationship between domestic assets and liabilities and that while he had the right to go to the home office it was not anticipated that he would ordinarily or customarily investigate the general responsibility of these corporations by examination in the various countries of the world of their assets and foreign risks.

Our view that the purpose of the statute as evidenced quite clearly by the sections which we have quoted is to consider domestic agencies of foreign corporations as separate organizations and to create domestic capital as security for domestic business finds support in the interpretation of the Insurance Department. It is stated in the brief of counsel for the Superintendent of Insurance, without any dispute so far as we are able to discover, that " for over forty years it has· been the policy of the State. to require foreign insurance companies to make deposits and to treat their assets in this country as invested capital for the security of policyholders and creditors who might deal with the company in the United States." It adopted that view in this very proceeding and it is quite inconceivable that if the Legislature intended that some other interpretation such as is now claimed should be placed upon the statute it would not have said so by proper amendment making the intention plain beyond any reasonable controversy.

It is suggested that it has done this by amendment in 1920 and 1923 of section 45 of the Insurance Law whereby it is provided that a foreign insurance company shall incorporate in its annual report " a statement of all of its transactions outside of the United States with insured corporations, partnerships, associations or individuals resident within the United States and affecting risks resident, located or originating in the United States, notwithstanding such transactions were not done through an attorney, manager or agent of such corporation within the United States; and such insurance corporation shall, as to all such transactions, report premiums, pay taxes thereon, and hold reserves thereon and such corporation shall be charged with the same duties and liabilities and its policyholders resident within the United States shall have the same rights as if such transactions had been done through its attorney, manager or agent within the

11

United States." We do not think that these amendments were intended to affect the provisions of the Insurance Law to some of which we have referred as relating to the question under discussion. Statements contained in the brief of counsel for the Superintendent of Insurance, more especially in the court below, make it quite clear that they were adopted in response to a report of the Superintendent of Insurance and for purposes of taxation and to prevent the unfair competition which would be inflicted upon domestic insurance companies if foreign companies were permitted through foreign agencies to issue policies to residents of this country without taxation such as was imposed on business done by domestic companies. The clauses pertaining to the rights and duties of insurance companies and of policyholders are very general in their terms. They were doubtless inserted to safeguard some unforeseen possibility and under general rules of construction we ought not to interpret them as altering or repealing the many specific provisions of the Insurance Law in the absence of words indicating a plain intention on the part of the Legislature to effect this result. Farther than that, these amendments even if having such a meaning as is claimed in respect of the application of deposits made by foreign insurance companies would not affect those involved in these proceedings, which were made long before the amendments in question and which would be governed by the law prevailing when and in accordance with which they were made.

We do not take time to discuss the complications and dangers which would beset holders of domestic policies if deposits here made for their security were to be depleted by claims on policies issued in foreign countries. As we have pointed out we do not think it would be possible in any complete or effective way to inventory, estimate and regulate such foreign risks and while, as is argued by one of respondent's counsel, the Legislature might

have power to safeguard against these perils by further legislation we cannot escape the feeling that if it can fairly be done we ought to interpret legislation already adopted in such a manner as to avoid these dangers rather than leave them to be eliminated by further legislative action.

The case of *People* v. *Granite State Provident Association* (161 N. Y. 492) does not in any manner conflict with the interpretation which we have placed upon the provisions of the Insurance Law. That case involved the distribution of the proceeds of assets deposited with the Banking Department by a foreign corporation which became insolvent. The Banking Law provided (sec. 14) that such a corporation as a condition of being allowed to do business should deposit with the Superintendent of Banks certain assets " as security for the depositors with and creditors of such corporation " and provided further (sec. 33) that a receiver appointed of such funds should distribute the same " among the creditors and shareholders of the corporation, company or association residing in this State " in the manner therein specified. There was no contest concerning the persons entitled to such distribution if these provisions were valid and applicable; the contest was entirely over other questions.

By these views in reference to the statute we are brought to the proposition, upon which respondents must rely for affirmance of so much of the order appealed from as provides for payment to the second class of policyholders, that there is some principle of equity, comity or public policy which authorizes the application of the funds in the hands of the Superintendent to payment in full of local creditors before transmission of any surplus to the primary or domiciliary receiver. We know of no such principle which, under the circumstances of this case, is recognized by our courts. The present question is not one between a foreign receiver and local creditors who have acquired a specific lien by attachment

or otherwise. It is a question of the duty of a conceded ancillary receiver who has come into possession of the insolvent's property before any lien was acquired thereon by creditors. The word " ancillary " defines a receiver who has been appointed in aid of and in subordination to a foreign receiver for the purpose of collecting and taking charge of the assets of the insolvent corporation in the jurisdiction where he is appointed. This conception of such a receiver indicates that he will act in aid of the primary receivership and not to the end of thwarting its purposes. The ordinary rule of distribution of the assets of an insolvent is equality amongst creditors of the same class and this rule requires, subject to the consideration hereinafter discussed, transmission of the funds in the hands of the Superintendent as ancillary receiver and not subject to any particular claim or lien as hereinbefore discussed, to the primary receiver for distribution *pro rata* amongst the creditors of the Insurance Company. (*Blake* v. *McClung*, 172 U. S. 239; *Central, etc., Co.* v. *Farmers, etc., Co.*, 113 Fed. Rep. 405; affd., 125 Fed. Rep. 1001.) Such is the disposition which, as matter of fact, has been required by our courts under identical or analogous circumstances, by decisions which are controlling in this proceeding. In *People* v. *Granite State Provident Association* (*supra*) the court dealt with two funds in the hands of the Superintendent of Banks. One consisted of the proceeds of general assets of the insolvent corporation; the other of the proceeds of a special deposit which had been required under the Banking Law before the corporation could transact business here. The latter fund which has already been mentioned was subject to rights of creditors similar to those given to the first class of policyholders in this proceeding and it was so applied. The first fund was subject to no specific claims or liens statutory or otherwise and it was held that it should be transmitted to the foreign receiver of the corporation " to be administered

and distributed at the home of the corporation," and it was said: " All creditors of a corporation wherever residing are entitled in case of insolvency to have the general assets distributed among them upon principles of perfect equality.  The courts of one State have no right to favor domestic creditors in the distribution but it must be made upon the principle that equality is equity."

The recent case of *Matter of People* (*City Equitable Fire Insurance Company*) (238 N. Y. 147) is controlling of the question here presented.  In that case as here the Superintendent of Insurance had in his possession a fund consisting of the deposits made by a foreign insurance company as a condition of doing business and also derived from " free " assets and a foreign creditor desired leave to attach the presumptive surplus of these funds over and above the claims against them by policyholders entitled to payment therefrom.  It was held that this should not be permitted but should be denied for reasons which are applicable to the present situation.  That case did not present the question which arises here between the foreign receiver and different classes of policyholders and, therefore, did not call for such a precise definition of the policyholders entitled to protection under sections 27 and 28 of the Insurance Law as has been required here.  But the opinion starting with the statement that the trust funds and securities held by the State Superintendent of Insurance were " for the purpose of paying all legal and valid claims of its [the insolvent corporation] policyholders in the United States as provided by sections 27 and 28 of the Insurance Law " then stated that the Superintendent held the property not " solely for the benefit of creditors or policyholders in this State or in the United States but for the interest of all its policyholders, creditors and stockholders wherever they may be," and that, having satisfied the claims of policyholders from " the funds deposited with the Superintendent  *  *  * for the benefit of its policyholders in the United States,"

thereby of course referring to the provisions of the Insurance Law already enumerated, it was his duty as ancillary receiver to transmit the surplus to the primary receiver. The entire opinion makes it clear that the surplus which it was thus held should be transmitted to the primary receiver was the surplus remaining after payment simply of policyholders as provided in sections 27 and 28 of the Insurance Law excluding any other policyholders.

No authorities of course could be cited from other jurisdictions which would be accepted as overruling our own decisions on this question. With possibly one exception no authorities either of text books or decisions are cited which do contradict the rule that it is the duty of an ancillary receiver in possession of property of a foreign corporation, subject to no specific lien or claim either by statute or process, to transmit that property under safeguarding regulations if necessary to the primary receiver for equitable distribution amongst all the creditors rather than to apply it first in full payment of local creditors. The so-called Russian cases (*Russian Reinsurance Company* v. *Stoddard*, 240 N. Y. 149; *First Russian Ins. Co.* v. *Beha*, 240 N. Y. 601, and *Andre* v. *Beha*, 240 N. Y. 605) have no application to the present question. In the first case we refused to permit a judgment in favor of plaintiff on the ground that in view of proceedings taken by the Soviet Government against plaintiff there was doubt of plaintiff's capacity to sue and also danger that the defendant would be subjected to a double recovery. There was no consideration of the claims of local creditors. In the second case we affirmed a judgment against the Superintendent of Insurance on the ground that the findings unanimously affirmed established " the continued existence of the corporation and the authority of the directors " and that there was no danger of a double recovery. In the third case we affirmed a judgment dismissing the complaint upon the express

ground that plaintiff was not the real party in interest and could not maintain the action.

*Willitts* v. *Waite* (25 N. Y. 577) simply held that creditors within this State having acquired a lien under our laws upon property of a foreign insolvent corporation within the State, would not on the demand of foreign receivers be sent to a foreign State to seek such portion of the insolvent estate as the laws of that State would upon distribution give them. No question was involved of the duties of an ancillary receiver appointed in this State of property upon which local creditors had no specific lien or claim to transmit funds to the primary receiver for distribution. Other authorities cited by respondents such as Pomeroy's Equity Jurisprudence (sec. 682), Cook on Corporations (vol. 5 [8th ed.], p. 3944, note), *Mabon* v. *Ongley Electric Co.* (156 N. Y. 196) and *Schloss* v. *Metropolitan Ins. Co.* (Sup. Ct. of Iowa, 128 N. W. Rep. 384), do not lay down any rule in the case of ancillary receivers having funds subject to no specific claim or lien in favor of local creditors any different than is here being announced; some of them expressly recognize and confirm it. If the case of *Frowert* v. *Blank* (205 Penn. St. 299, 304) is to be regarded as laying down any different rule as prevailing in the State of Pennsylvania we decline to follow its views.

There still remains to be considered one rule of administration which may be applied in favor of domestic creditors in respect of the funds in the hands of the ancillary receiver. This is to the effect that domestic assets will not as against domestic creditors be transmitted to a foreign receiver or liquidator if there is any danger that the latter's distribution thereof will be made in a manner unfair to the domestic creditors. (*Matter of People* [*City Equitable Fire Ins. Co.*], *supra.*) There is nothing now before us to indicate that our domestic creditors would suffer from any unfair methods adopted by the foreign receiver. It is, however, the fact that a large

number of the domestic claims here involved are respectively of such small amount that they would scarcely bear the expense of presentation and proof abroad and, therefore, we think that under a proper extension of the principles above referred to it would be proper for our courts to provide as a condition of transmission of the funds held by the Superintendent of Insurance that domestic creditors should be allowed in some proper manner to prove their claims in this country as against, and for the purpose of distribution of assets by, the foreign receiver. (*New York Security & Trust Co.* v. *Equitable Mortgage Co.*, 71 Fed. Rep. 556.)

The orders appealed from should be reversed so far as they provide for payment from the assets in the hands of the Superintendent of Insurance of claims of policyholders and creditors included in the second class and the matter remitted to the Supreme Court for further proceedings in accordance with this opinion, with costs to the appellants in all courts. The questions certified to us are answered in the negative.

POUND, MCLAUGHLIN, CRANE, ANDREWS and LEHMAN, JJ., concur; CARDOZO, J., absent.

Ordered accordingly.