**LLOYDS INS. CO. OF AMERICA, Inc. (PINK, Commissioner of Insurance of New York, Intervener), v. STATE.**

No. 8581.

Court of Civil Appeals of Texas. Austin.

Oct. 21, 1936.

Rehearing Denied Nov. 18, 1936.

Jack F. Hyman, of Dallas, and Bruce Bledsoe, of Austin, for appellant Lewis F. Pink.

Wm. McCraw, Atty. Gen., and Vernon Coe, Asst. Atty. Gen., for the State.

Bromberg, Leftwich, Carrington & Gowan, of Dallas, for appellee American Indemnity Co.

Leachman & Gardere, of Dallas, for appellee Employers Casualty Co.

Burgess, Chrestman & Brundidge, of Dallas, for appellee Massachusetts Bonding & Insurance Co.

BLAIR, Justice.

This litigation arose as follows:

The Lloyds Insurance Company of America, a foreign insurance corporation doing business in Texas, was dissolved in the state of New York, its domicile, and the Superintendent of Insurance of such state became the statutory liquidator or primary receiver of all the assets wherever situated, under authority of the statutes of New York. James F. Gray was appointed receiver of the corporation's Texas assets in this cause, and he stands in the position of an ancillary receiver. The New York liquidator and the Texas receiver entered into an agreement (which was approved by the order of their respective courts), the material portion of which reads, as follows: "The Liquidator and the Texas Receiver will cooperate in the collection by the Texas Receiver of all assets of the companies within the State of Texas; and the Texas Receiver will, after deducting the expenses of the Texas proceeding (as determined by the Court in

charge of that proceeding), and after the further deduction of any trust assets determined by that Court to be applicable only to Texas claimants, transmit all other assets to the Liquidator for general distribution to general creditors of the Lloyds Insurance Company of America and of the General Indemnity Corporation of America insofar as the claims of the said general creditors are allowed by a court of competent jurisdiction, regardless of the residence of such claimants or of the place wherein such claims arose."

Appellees, Massachusetts Bonding & Insurance Company, American Indemnity Company, Employers Casualty Company, Harry L. Hussman, H. W. Underhill Construction Company, and the State of Texas, filed their respective petitions of intervention to set aside this contract as being void because the $50,000 deposit by the Lloyds Insurance Company with the State Treasurer, under provision of article 4971 (being substantially all the assets in the hands of the Texas receiver), was a trust fund for the primary benefit of persons holding surety, guaranty, or fidelity claims arising in Texas; but that contrary to the statute, the contract provided and the Texas receiver was proposing to transmit all of the trust fund or assets, after deducting certain expenses, to the New York liquidator, to be paid by him to general creditors wherever such claims arose; and because in any event said deposit, whether trust fund or not, was subject to distribution by the Texas court to such claimants as may prove their claims.

After obtaining permission of the court, the New York liquidator filed an original and a "First Amended Original Petition" of intervention, alleging that the contract was valid; that the $50,000 deposit was under the terms of article 4971 for the benefit of the holders of surety, fidelity, and guaranty obligations wherever such claims arose; that as statutory liquidator he had the right to receive such fund; and that it was for the best interest of Texas and all other creditors for the Texas receiver to deliver him the fund for distribution in accordance with the terms of the statute and contract, which he, by his pleadings, interpreted as requiring the fund, after paying the Texas receivership expenses, to be paid to holders of surety, fidelity, and guaranty obligations wherever such claims arose.

Appellees filed a joint supplemental petition, demurring to the pleadings filed by the New York liquidator. The court reserved its ruling on the demurrer until the case was heard, at which time the court found "the facts and the law" to be with the State and interveners; decreed the above contract to be void and annulled it, "insofar as same provides for the transmission and delivery of $50,000 deposited with the State Treasurer of the State of Texas, to the Superintendent of Insurance of the State of New York, and insofar and only insofar as the same provides for the distribution of said $50,000, or the proceeds thereof to general creditors of Lloyds Insurance Company of America"; and further decreed that the Texas receiver distribute the $50,000 trust fund to holders of fidelity, surety, and guaranty obligations arising in Texas, ratably if need be. The court then sustained the demurrer to the New York liquidator's pleadings and dismissed his plea of intervention; hence this appeal.

Having permitted the Texas receiver to enter into a contract with the New York liquidator with respect to the distribution of the assets of the corporation situated in Texas, and having permitted the New York liquidator to file his intervention herein, setting up his interpretation of the contract, the trial court erred in dismissing his plea of intervention after the hearing on the merits in the suit to cancel the contract. Such action, however, does not require the reversal of the case. This court will reform the judgment so as to reinstate the plea of intervention. Where an ancillary receiver has been appointed, "the domestic court may permit the intervention of a foreign receiver as a matter of comity, since even if the assets were retained for distribution among resident creditors, the foreign receiver might be entitled to any surplus after distribution." 53 C.J. 40, § 688 (3). This rule also applies where the court appointing the ancillary receiver may adjust the rights of such persons as may be shown to have valid claims against the property or assets, regardless of their residence, and as to which rights the primary receiver must also act. East Line & Red River R. Co. v. State, 75 Tex. 434, 12 S.W. 690. The rule is largely controlled by the fact that there is need of uniformity and equitable distribution of the assets of the insolvent, and where foreign creditors have an interest in the funds or assets in the hands of the ancillary receiver, the primary receiver may be permitted, as a matter of comity, to intervene as the repre-

sentative of such foreign creditors. 53 C.J. 408, § 687 (2). And it seems to be settled in Texas that a foreign receiver may be allowed to intervene in a domestic receivership. Youngstown Bridge Co. v. North Galveston, H. & K. C. R. Co. (Tex. Civ.App.) 31 S.W. 420.

In his brief, appellant New York liquidator makes the statement that there is but one controlling question presented by this appeal, namely: "Is the deposit made by a foreign insurance company under article 4971 for the benefit only of those creditors holding surety, fidelity, or guaranty claims arising in Texas?" He further says, "If it is, the judgment of the court below can stand. If it is not, the judgment cannot, on any theory, be sustained." We do not agree that the question presented is so limited.

The question presented is whether the Texas court has the right and discretion to hold and administer the statutory trust funds in question through its Texas receiver. The general rule governing primary and ancillary receivers is stated in 53 C.J. 407, as follows: "Where an ancillary receiver has been appointed in aid of the primary receivership, each of the appointing courts retains full and exclusive jurisdiction of the assets over which its receiver is appointed, and of its receiver in respect of his management and disposition of such assets. The court of ancillary jurisdiction has the power to retain and administer local assets of the insolvent, and in the absence of permission from the court appointing him, an ancillary receiver cannot transfer questions of administration of local assets to a foreign jurisdiction. Whether the ancillary court will retain local assets or will direct their transmission to the jurisdiction of primary receivership for administration, is discretionary with it, and the exercise of its discretion is governed by no inflexible rules."

In applying this rule it was held in Re Stoddard, 242 N.Y. 148, 151 N.E. 159, 165, 45 A.L.R. 622, that "domestic assets will not as against domestic creditors be transmitted to a foreign receiver or liquidator, if there is any danger that the latter's distribution thereof will be made in a manner unfair to the domestic creditors." Applying such rule to the instant case, a construction of the above contract and of article 4971 becomes necessary in order to determine whether the Texas ancillary court has abused its discretion in canceling a portion of the contract and in refusing to transmit the statutory trust fund involved to a foreign jurisdiction for administration.

■ The contract and the statute were pleaded by all parties and their respective interpretations placed upon them by the pleadings. On its face the contract provided that after paying certain expenses, the Texas receiver would "transmit all other assets to the liquidator for general distribution to general creditors of Lloyds Insurance Company of America, and of the General Indemnity Corporation of America insofar as the claims of said general creditors are allowed by a court of competent jurisdiction." By his pleadings appellant liquidator alleged that the term, "general creditors," as used in the contract, meant those creditors generally who held surety, fidelity, or guaranty obligations against the insolvent corporation wherever arising. But the trial court was not bound by this conclusion of the pleader, and the clause, "general distribution to general creditors," has a recognized and well-defined meaning in law. This language of the contract was plain and unambiguous, and its construction became a question of law for the trial court. Obviously the language, "general creditors," could not be limited to creditors who held only surety, fidelity, or guaranty obligations against the insolvent insurance company.

The $50,000 required to be deposited by foreign fidelity, guaranty, and surety companies as a condition to doing business in Texas was under the provisions of article 4971 a trust fund, which fund was "to remain with him in trust to answer any default of said company as surety upon any such bond, undertaking, recognizance, or other obligation established by final judgment in whatsoever court and wheresoever rendered upon which execution may lawfully be issued against said company; said Treasurer and his successors in office being hereby directed to so receive and hereafter retain such deposit under this law in trust for the purposes hereof."

■ This language of the statute specifically and definitely makes the fund so deposited a trust fund for the benefit of obligations which may have been incurred by reason of the insolvent insurance company's doing a fidelity, guaranty, or surety business wherever incurred; and under settled law creates an equitable lien upon the fund so deposited as security for the class of obligations arising out of the doing of

that character of business by the foreign insurance company. Walker v. Brown, 165 U.S. 654, 17 S.Ct. 453, 41 L.Ed. 865. Therefore, neither the New York liquidator nor the Texas receiver has any right or power to divert this statutory trust fund which was created for the benefit of the special class of creditors specified in the statute, and pay such fund to the general creditors of the insolvent corporation. A distribution of such fund to the general creditors would have obviously been unfair to appellees, who hold obligations of fidelity, surety, and guaranty arising in the Texas business. In any event, the distribution of the trust fund to general creditors would be in violation of the statute creating the trust fund; and the court of the state creating the trust fund has the right to construe the statute and to direct the distribution thereof in accordance with the terms of the state statute. The trial court therefore was authorized to hold the contract void in so far as it required the Texas receiver to transmit the trust fund to the New York liquidator for distribution to general creditors and to order its distribution in Texas in accordance with the provisions of article 4971.

 The trial court held that the deposit of $50,000, provided for by article 4971, was for the primary benefit of persons holding surety, guaranty, or fidelity claims arising in Texas. Appellant New York liquidator contends that the deposit made under said statute constituted a trust fund for creditors holding claims of a surety, guaranty, or fidelity nature, wherever the claimants reside or the claim arose, whether in Texas or elsewhere. We agree with the construction placed upon the statute by appellant liquidator.

The statutes involved were before their amendment in 1921, articles 4930 and 4935, R.S.1911, which were construed by the Supreme Court in the case of Phillips v. Perue, 111 Tex. 112, 113, 229 S.W. 849, the court holding that such deposit was a special trust fund for the protection of the depositing company's policy obligations arising out of the transaction of its business in this state. About four months after this decision the Legislature (37th Leg. 1921, 1st Called Sess. c. 4) amended articles 4930 and 4935, R.S.1911, the caption of the amending act reading as follows: "An Act to amend Articles 4930 and 4935, Chapter 13, Title 71, of the Revised Civil Statutes of Texas, 1911, so as to provide that the deposits thereby required or therein referred to shall be for the benefit of the holders of all the obligations of the depositor wheresoever incurred, and to repeal all laws in conflict herewith, and declaring an emergency."

The emergency clause of the amending act reads as follows: "The fact that the Supreme Court of Texas has recently decided that the deposits required by and mentioned in said Articles 4930 and 4935 are for the benefit of the holders of obligations incurred in the State of Texas only, and the resulting disadvantage and injustice to Texas Fidelity, Guaranty and Insurance Companies creates an imperative public necessity and an emergency, which requires that the constitutional rule providing that bills shall be read on three separate days in each house be suspended, and said rule is hereby suspended, and this Act shall take effect and be in force from and after its passage, and it is so enacted." Section 3.

The decision of the Supreme Court referred to in the emergency clause was in Phillips v. Perue, supra.

These amended articles are now articles 4971 and 4976, R.S.1925. The pertinent provisions of article 4971 reads as follows: "And must, also, have on deposit with the Treasurer of this State at least fifty thousand dollars in good securities worth at par and market value, at least that sum, of the value of which securities the Commissioner [of Insurance] shall judge, held for the benefit of the holders of all the obligations of such company wheresoever incurred."

The pertinent provisions of article 4976 (as amended by Acts 1st Called Sess., 1921, c. 4, § 2) read as follows: "Should any company of the character named or enumerated in this chapter fail or refuse to pay any loss by it wheresoever incurred within sixty days after its liability thereupon shall have been finally determined by the judgment of any court of competent jurisdiction wheresoever rendered, upon satisfactory proof, to the treasurer of this State, of such liability and of its non-payment, said treasurer shall, out of the deposits so made with him, as by this chapter provided, pay said loss and, when he shall have done so, he shall at once certify to the Commissioner of Insurance and Banking the fact of such default on the part of said company; whereupon said Commissioner

shall forthwith cancel and annul the certificate of authority of such company to do business in this State; provided, that such payment shall not operate to release the company from payment of any balance which it still may owe after such payment by the Treasurer of this State has been made."

The amending act was addressed directly to the language of the Supreme Court in the case of Phillips v. Perue, in which the court stated that article 4930, R. S.1911, contained no language indicating whether or not the deposit was a trust fund for the primary benefit of Texas creditors; but the court reasoned that when said article was construed in the light of article 4935, R.S.1911, it was clear that the deposit was for the benefit primarily of Texas creditors. The amending act called attention to this language of the court and the language, "holders of its obligations," was amended so as to read, "holders of all the obligations of such company wheresoever incurred," and the language, "final judgment upon which execution may lawfully be issued," was amended to read "established by final judgment in whatsoever court and wheresoever rendered." It will be further noted that article 4935, R.S. 1911, was amended, changing the language, "any loss by it incurred in this state" and "within sixty days after its liability thereupon shall have been by suit finally determined," to read, "shall have been finally determined by the judgment of any court of competent jurisdiction wheresoever rendered." Thus it clearly appears that the Legislature intended that the $50,000 trust fund, provided by article 4971, was for the benefit of holders of surety, fidelity, and guaranty obligations of the foreign corporation wheresoever incurred or wheresoever arising.

The State points to the language used by the court in Senter v. Lockhart, 125 Tex. 20, 82 S.W.(2d) 375, 376, 101 A.L.R. 494, as being a construction of article 4971, and which reads as follows: "This deposit is a special trust fund for the protection of the depositing company's policy obligations arising out of the transaction of its business in this state. Phillips v. Perue, 111 Tex. 112, 229 S.W. 849."

This language does not appear to be material to the decision in said case. The court made no reference to the amendment of the statutes discussed in the Phillips v. Perue Case, and appellant states that the

briefs in the Senter v. Lockhart Case did not disclose the amendment of such statutes after the decision in the Phillips v. Perue Case. Such being the facts, we feel free to discuss and construe the statutes as amended.

The judgment of the court ordering priority of Texas claims is set aside, and judgment is here rendered ordering distribution of the trust fund to all creditors holding surety, guaranty, or fidelity obligations of the insolvent corporation wheresoever arising, and without regard to whether the claim arose in Texas or elsewhere, and as thus reformed the judgment of the trial court on the merits will be affirmed in all other respects.