[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 579 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 580 
Judge COWLES, on the hearing before him, found, as matters of fact, that on the 23d of December, 1854, the Metropolitan Bank sued the Toledo Bank as a foreign corporation, and attached the funds of that bank in the *Page 581 
hands of the American Exchange Bank; that on the 5th of January, 1855, O.H. Bliss and Joseph Kelsey commenced a similar suit against the Toledo Bank, and attached the funds of that bank in the hands of the American Exchange Bank; that on the 5th February, 1855, the defendants, Powers, Martin and Sheridan, also sued the Toledo Bank in like manner, and attached the funds of that bank in the hands of the American Exchange Bank, and that all of the above attachments were levied by John Orser, sheriff of New York.
In view of these findings of fact, it is very plain to me that the counsel for the receivers cannot now, for the first time, take or urge the point, that the attachments were not duly levied or served. It must be presumed that they were.
So, also, as to the point taken by the counsel for the receivers, that the Superior Court had no jurisdiction of the action of the Metropolitan Bank, and that, therefore, the attachment issued in the action was void. If the counsel is right in supposing that section 427 of the Code does not extend or enlarge the jurisdiction of the Superior Court as to actions against foreign corporations, given or conferred by subdivision 3 of section 33 of the Code, yet, in the absence of anything in the case to show the contrary, it must be presumed that the Superior Court had jurisdiction of that action, under section 33 of the Code, and that the attachment in the action was duly issued. The presumption must be in favor of the jurisdiction of the court, and the regularity of the attachment, particularly as it does not appear that this point was at any time taken or urged in the court below.
It is plain, too, that there is no force in the point taken by the counsel for the receivers, that all the proceedings in the suits against the Toledo Bank were void, on the ground that that bank had ceased to exist as a corporation before the suits were commenced. The Ohio statute does not declare, nor do I see any ground upon which it can be said, that its insolvency and the consequent transfer of its property was, or should be, deemed a dissolution of the corporation. It is plain to me that, notwithstanding its insolvency and the consequent transfer *Page 582 
of its property, it continued to have a name and existence as a corporation, so far, at least, as to be capable of being sued as such.
The question, then, in this case, is whether the court below erred in deciding that the attaching creditors had acquired liens upon the funds in question, in preference to any claim of the receivers, and in directing the funds to be applied in payment of the claims of the attaching creditors.
The decisions of the courts of this State leave no room for doubt on this question.
Assuming that the Ohio statute, upon the insolvency of the Commercial Bank of Toledo, vested all its property, in the first instance, in the board of control, and then in the receivers, on their appointment under the act, this transfer of its property, as to the insolvent bank, was and must be deemed to have been an involuntary transfer.
It would be absurd to say or to presume that the bank purposely committed the act of insolvency for the purpose of so transferring its property, and, therefore, that the transfer was, or should be, deemed voluntary.
This statutory proceeding as to the courts of this State was a foreign statutory bankrupt proceeding, by which the bankrupt or insolvent corporation was divested of all its property, by the statute, without its consent.
It may be conceded that, as between the receivers and the insolvent bank, the statute vested in the receivers, on their appointment, the title to the funds in question in the American Exchange Bank; but as the Ohio statute, and the proceedings under it, could have no force or operation in this State, except such as might be conceded to it by the authorities and courts of this State, on the principle of comity, it follows that such title must be deemed to have vested in the receivers subject to the control of the authorities and courts of this State over the funds, under the laws and regulations of this State.
The question, then, is one of comity, to be settled by the decisions of the courts of this State, as determining how far they will recognize a foreign involuntary bankrupt proceeding. *Page 583 
In Holmes v. Remsen (20 John., 259), it was said that the assignees of a bankrupt take "subject to the remedies provided by the laws of the foreign country where the debt is due," c. Again: "The law of the domicile having sequestered the bankrupt's estate, so as to divest him of the control over it, and appointed them (the assignees of the bankrupt) to administer it, they stand here on the footing of administrators merely, with a right of suing in common with other creditors; but our law will not regard the chose in action as exclusively appropriated to their use; and the preference can only be gained by pursuing the remedies which our laws afford."
It would probably follow, from the principles laid down inHolmes v. Remsen, that the court below was right in awarding the funds in question to the attaching creditors; but the Court of Errors, in Abraham v. Plestoro (3 Wend., 540-548), went much further in refusing to recognize a title under a foreign bankrupt law. I understand that in this case the court held, that such title will not be recognized by the courts of this State, even where the question arises entirely between the bankrupt and his assignee and creditors, all residing in the country under whose laws the assignment was made.
Abraham v. Plestoro was an appeal from an order of the Chancellor, denying a motion to dissolve an injunction. (1 Paige Ch., 236.) The Chancellor conceded that had the contest arisen between creditors abroad, claiming under the proceedings in bankruptcy, and creditors here claiming adversely under our laws, the preference would be due to the latter.
The same principles apply to bankrupt proceedings under a statute of one of the States of the Union. (Johnson v. Hunt,
23 Wend., 87; Hoyt v. Thompson, 1 Seld., 329, 330; BEARDSLEY,arguendo, and cases cited by him; Hoyt v. Thompson,19 N Y, 224, 225.)
The cases cited will not permit a doubt that the judgment of the Supreme Court should be affirmed, with costs.