JOHN BARTH, as General Assignee, etc., Respondent, *v.* ERASTUS P. BACKUS et al., Appellants.

*It seems,* in this state the general rule that the validity of a transfer of personal property is governed by the law of the domicile of the owner applies to voluntary assignments for the benefit of creditors, and the title of the assignee under such an assignment, made in another state or country by a citizen thereof, and valid by the law of the domicile, will prevail against the lien of an attachment issued in this state in favor of a creditor, levied after the execution of the assignment upon a debt or chattel which belonged to the assignor, provided the recognition of the assignee's title will not contravene the statutory law of the state, or be repugnant to its policy.

This rule, however, does not apply to an assignee's title to personal property, acquired by transfer under foreign insolvent or bankrupt laws, and such title will not be recognized where it comes in conflict with the rights of creditors pursuing their remedy here, although the proceedings were instituted subsequent to, and with notice of the transfer

A creditor coming here from the domicile of the debtor and pursuing his remedy by attachment, stands upon the same footing in this respect and has the same right of priority as has a resident creditor.

The provisions of the statute of Wisconsin in reference to voluntary assignments for the benefit of creditors, as amended in 1889, which provide that the assignor may be discharged from his debts as part of the proceedings under such assignment upon compliance with the provisions of the act, and declare that every creditor, whether resident or non-resident, who accepts a dividend, or who participates in the proceeding, shall be bound by the discharge; also that a creditor, unless

he comes in under the assignment, shall be debarred from recovering anything out of the assigned property, save a share in a surplus, if any remains after paying the participating creditors in full, are in the nature of a bankrupt act.

An assignment, therefore, under the statute is ineffectual to transfer the title of the insolvent to property in this state, as against an attaching creditor here; and this, although such creditor is a resident of Wisconsin.

The said provision of the Wisconsin statute providing for the discharge of insolvent debtors applies to corporations as well as to individuals.

(Argued October 17, 1893 ; decided November 28, 1893.)

APPEAL from judgment of the General Term of the Supreme Court in the third judicial department, entered upon an order made February 15, 1893, which affirmed a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

This action was brought originally by plaintiff as general assignee for the benefit of creditors of the Wilkin Manufacturing Company, a corporation of Wisconsin, against the Canton Lumber Company, a domestic corporation, to recover an amount remaining unpaid on a bill for machinery furnished by said Wisconsin company to said lumber company. It appeared that after the execution of the assignment and before the bringing of this action, the sheriff of St. Lawrence county attached said debt under warrants of attachment in four several actions. Afterwards, this action having been brought, the amount of the debt was paid into court by said lumber company, and said sheriff and the attaching creditors, who were New York corporations, were substituted as defendants.

Further facts are stated in the opinion.

*Nelson L. Robinson* for appellant. The statutes of Wisconsin, under which the assignment of the Wilkin Manufacturing Company was made, constitute an insolvent law, and the assignee obtained no title to the property in question as against the attaching creditors of the assignor. (Burrill on Assign. § 303 ; Bishop on Insolv. Debtors, § 236 ; *Willitts* v. *Waite,*

25 N. Y. 577; *Kelly* v. *Crapo*, 45 id. 86; *H. Bank* v. *Lacombe*, 84 id. 367; *Reynolds* v. *Adden*, 136 U. S. 348; *Rhawn* v. *Pierce*, 110 Ill. 350; *Upton* v. *Hubbard*, 28 Conn. 274; *Payne* v. *Lester*, 44 id. 196; *McClure* v. *Campbell*, 71 Wis. 350; *Hempsted* v. *W. F. & M. Ins. Co.*, 78 id. 375; *Baldwin* v. *Hale*, 1 Wall. 223, 234; *Kelly* v. *Drury*, 9 Allen, 27; *Ilsley* v. *Merriam*, 7 Cush. 242; *Fessenden* v. *Wiley*, 2 Allen, 67; *Guernsey* v. *Wood*, 130 Mass. 503; *Holton* v. *Burton*, 78 Wis. 321.) An assignment, whether made on the motion of the insolvent or by decree of the court, is one in an insolvency or bankruptcy proceeding, provided that the debts due from the insolvent to his creditors may be compulsorily discharged in that proceeding. (*Upton* v. *Hubbard*, 28 Conn. 274, 283; *McClure* v. *Campbell*, 71 Wis. 350; *Mayer* v. *Hellman*, 1 Otto, 496; *Wendell* v. *Lebon*, 30 Minn. 109, 234; *In re Mann*, 32 id. 60; *Lord* v. *Meacham*, Id. 66; *Bennett* v. *Denny*, 24 N. W. Rep. 193; *Simon* v. *Manser*, 23 id. 856.) The trial court erred in holding that the provision of the statute, allowing the assignor to obtain a compulsory discharge, does not affect a general assignment, so as to make it a proceeding under an insolvency law. (*Hempsted* v. *Bank*, 78 Wis. 375; *Holton* v. *Burton*, Id. 321.) The court below erred in its conclusion that a corporation cannot be discharged from its debts under the statute, but that after making an assignment it should not " be enabled to begin anew and run again its course." (*Sleeper* v. *Goodwin*, 67 Wis. 577; Morawetz on Priv. Corp. § 1010; Beach on Priv. Corp. § 782; Cook on Stock & Stockholders, § 631; *Powers* v. *H. P. Co.*, 60 Wis. 23; *Mohr* v. *E. Co.*, 40 Minn. 343; *DeRuyter* v. *Trustees*, 3 N. Y. 238; Burrill on Assign. [3d ed.] 85, 401; Ang. & Ames on Corp. § 191; *Tripp* v. *N. N. Bank*, 45 Minn. 383.) The assignment made in Wisconsin by the Wilkin Manufacturing Company was repugnant to the laws and policy of the state of New York. Therefore, the assignee obtained no right as against the attaching creditors to property situated in this state and cannot contest in our courts claims lawfully levied here, upon the property

of his assignor by citizens of this state, or by any other persons lawfully suing in its courts. (*Harris* v. *Thompson*, 15 Barb. 62; *Robinson* v. *Bank of Attica*, 21 N. Y. 406; *Sibell* v. *Remsen*, 33 id. 95; *Vanderpoel* v. *Gorman*, 22 N. Y. Supp. 541; *King* v. *Sarria*, 69 N. Y. 24; *Sondheim* v. *Gilbert*, 117 Ind. 71; *Phelps* v. *Borland*, 103 N. Y. 406–410; *Warner* v. *Jaffray*, 96 id. 248; *Guillander* v. *Howell*, 35 id. 657; *Keller* v. *Paine*, 107 id. 83; *Green* v. *W. I. Works*, 23 Atl. Rep. 498; *Faulkner* v. *Hyman*, 142 Mass. 53; *Ingraham* v. *Geyer*, 13 id. 146; *Smith* v. *C. & N. W. R. Co.*, 23 Wis. 267; *Hyer* v. *Alexander*, 108 Ill. 385; *Kelley* v. *Crapo*, 45 N. Y. 95.) Plaintiff's objection that the attaching creditors bought the claims of the Wisconsin creditors with knowledge of the assignment is untenable. (*McClure* v. *Campbell*, 71 Wis. 350; *Proctor* v. *Bank of Republic*, 152 Mass. 223; *Warner* v. *Jaffray*, 96 N. Y. 254; *H. Bank* v. *Lacombe*, 84 id. 367.) A foreign corporation may assign to a resident a claim against another foreign corporation on which it could not itself sue here. (*McBride* v. *F. Bank*, 26 N. Y. 450; *Petersen* v. *C. Bank*, 32 id. 21, 40–48; *Ervin* v. *O. R. & N. Co.*, 28 Hun, 269, 273.) Money in the hands of an officer of the court is attachable. (*Dunlop* v. *P. F. Ins. Co.*, 74 N. Y. 145; *Wehle* v. *Conner*, 83 id. 231.)

*Thomas Spratt* and *Ledyard P. Hale* for respondent. A voluntary general assignment for the benefit of creditors, if valid by the laws of the state where made, will transfer the title to personal property in this state, including a debt due from a resident. (*Ockerman* v. *Cross*, 54 N. Y. 29; *Warner* v. *Jaffray*, 96 id. 248; *Ackerman* v. *Cross*, 40 Barb. 465; *Kelly* v. *Crapo*, 45 N. Y. 86, 90; *Boese* v. *King*, 78 id. 471, 476; *H. N. Bank* v. *King*, 10 Abb. [N. C.] 346; *O'Neill* v. *Nagle*, 19 id. 399; *Moore* v. *Willett*, 35 Barb. 663; *Williams* v. *Ingersoll*, 89 N. Y. 508, 523; *Barnett* v. *Kinney*, 147 U. S. 476; *Caskie* v. *Webster*, 2 Wall. 131; *Bholen* v. *Cleveland*, 5 Mason, 174; *Livermore* v. *Jenckes*, 21 How. [U. S.] 126; *Frank* v. *Bobbitt*, 155 Mass. 112; *Rosenthal* v. *M. Bank*, 17

Blatch. 318; *Sanderson* v. *Bradford,* 10 N. H. 260; *Hanford* v. *Paine,* 32 Vt. 442; *Means* v. *Hapgood,* 19 Pick. 105; *Law* v. *Mills,* 18 Penn. St. 185; *May* v. *F. N. Bank,* 122 Ill. 551; *P. M. Co.* v. *White,* 68 Ga. 96; *Juillard* v. *May,* 130 Ill. 87; *Butler* v. *Wendell,* 57 Mich. 62; *Weider* v. *Maddox,* 66 Tex. 372.) The New York court will, in the exercise of judicial comity, treat the assignment the same as the Wisconsin court would a New York assignment. (*Mowry* v. *Crocker,* 6 Wis. 325, 330; *Smith* v. *C. & N. W. R. Co.,* 23 id. 267; *Cook* v. *Van Horn,* 81 id. 291.) The defendants do not stand in the position of New York creditors who have been injured by this assignment. (*Bacon* v. *Horne,* 123 Penn. St. 452; *Bagby* v. *R. R. Co.,* 86 id. 291; *Warner* v. *Jaffray,* 96 N. Y. 248, 258; *Chafee* v. *F. N. Bank,* 51 Maine, 514, 525.) Chapter 385 of the Wisconsin Laws of 1889 does not include a corporation, and does not apply to this assignment. (*Sleeper* v. *Goodwin,* 67 Wis. 577.) The right of a corporation to make an assignment in Wisconsin is not repugnant to our law, as it relates to matter of form and not of substance; it is a matter of domestic regulation, and does not permit any different disposition of the assets of the corporation there than would be had under a receiver in New York. The New York court will look to the intent and effect of the transfer. (*Ockerman* v. *Cross,* 54 N. Y. 29; *Warner* v. *Jaffray,* 96 id. 248, 258.) The right of a corporation to make an assignment for the benefit of creditors is clear, unless prohibited by statute. (*De Ruyter* v. *St. Paul's Church,* 3 N. Y. 238, 242; 3 Barb. Ch. 119, 124; 3 R. S. [8th ed.] 1729, § 4; Laws of 1892, chap. 688, § 48; Laws of 1890, chap. 564, § 48.)

ANDREWS, Ch. J. The general rule that the validity of a transfer of personal property is governed by the law of the domicile of the owner, is in most jurisdictions held to apply to a transfer by voluntary assignment by a debtor of all his property for the benefit of creditors, as well as to a specific transfer by way of ordinary sale or contract; and the title of such assignee, valid by the law of the domicile, will prevail

against the lien of an attachment issued and levied in another state or country subsequent to the assignment, in favor of a creditor there, whether a citizen or non-resident, upon a debt or chattel belonging to the assignor, embraced in the assignment, provided the recognition of the title under the assignment would not contravene the statutory law of the state, or be repugnant to its public policy. The decisions are not uniform, but this is the general rule, supported by the preponderating weight of authority, and is the settled law of this state. (*Ockerman* v. *Cross*, 54 N. Y. 29 ; Bishop on Insolvents, §§ 241, 265; and cases cited.) But this general rule is subject to a qualification established in the jurisprudence of the American states, that a title to personal property acquired *in invitum* under foreign insolvent or bankrupt laws, good according to the law of the jurisdiction where the proceedings were taken, will not be recognized in another jurisdiction where it comes in conflict with the rights of creditors pursuing their remedy there against the property of the debtor, although the proceedings were instituted subsequent to and with notice of the transfer in insolvency or bankruptcy. (*Holmes* v. *Remsen*, 20 Johns. 229 ; *Kelly* v. *Crapo*, 45 N. Y. 87 ; *In re Waite*, 99 id. 433 ; 2 Kent Com. 406, 407.) This exception proceeds upon the view that to give effect to such a transfer arising by operation of law, and not based upon the voluntary exercise by the owner of the *jus disponendi*, would be to give the foreign law an extra-territorial operation, which the rule of comity ought not to permit to the prejudice of suitors in another jurisdiction. The cases in this state since the case of *Holmes* v. *Remsen* (4 Jo. Ch. 460), in which the chancellor sought to maintain the English doctrine on the subject, have uniformly sustained the rights of domestic attaching creditors against a title under a prior statutory assignment in another state or country, the several states of the Union being treated for this purpose as foreign to each other. (*Willitts* v. *Waite*, 25 N. Y. 577; *Johnson* v. *Hunt*, 23 Wend. 87; *Kelly* v. *Crapo, supra*.)

The general question in this case involves the point whether
the assignment made by the Wilkin Manufacturing Company,
under the statute of Wisconsin, is to be treated as a voluntary
assignment, not in conflict with our laws or policy, or whether,
in view of the compulsory clauses of that statute, it is
to be regarded as in the nature of a bankrupt law, and
ineffectual to transfer title to the property of the insol-
vent in our jurisdiction as against attaching creditors. In con-
sidering whether the title of the assignee in Wisconsin is para-
mount to the claims of creditors here, who, subsequent to the
assignment, procured attachments against the debt owing to
the Wilkin Manufacturing Company by the Canton Lumber
Company, a reference to the Wisconsin statute under which
the assignment was made, becomes important. The original
statute upon the subject of voluntary assignments by fail-
ing debtors, was similar to the statute in this state upon the
same subject. It was a statute prescribing the conditions
of such assignments and regulating the administration of the
trust for the protection of creditors. In 1889, radical changes
were made in the statutory system of Wisconsin, and the prior
statute was amended. The amendments, among other things,
provided that the assignor in a voluntary assignment for the
benefit of his creditors, made under, or in pursuance of the
laws of the state, " may be discharged from his debts as a part
of the proceedings under such assignment, upon compliance
with the provisions of this act." It further declared that every
creditor of the insolvent debtor residing within or without the
state who should accept a dividend out of the assigned estate,
or in any way, by proving his claim or otherwise, participate
in the proceedings under the assignment, shall be " deemed to
have appeared in the matter of such assignment and the appli-
cation for a discharge, and should be bound by any order or
discharge granted by the court," subject to the right of appeal.
Under the statute, a creditor, by accepting a dividend, thereby
consented to a discharge of the debtor from the portion of the
debt remaining over and above his share of the assets, and
unless a creditor comes in under the assignment, he is debarred

from receiving anything out of the assigned property, unless indeed a surplus should remain after payment of the participating creditors in full, although it seems the debt would remain as a claim against the insolvent.

The power to discharge a contract without payment or satisfaction and without the consent of the parties, is a power which pertains to the sovereign alone. The statute of Wisconsin does not assume to discharge the debts owing by the insolvent assignor absolutely. But, as has been said, it deprives creditors who do not come in under the assignment, of all share in the assigned estate, unless in the improbable contingency ot a surplus. This coercive feature of the scheme, if contained in a voluntary general assignment for the benefit of creditors, would render the assignment void. (*Grover* v. *Wakeman*, 11 Wend. 189.) The statute of Wisconsin, however, incorporates this feature and the law is recognized by the courts of Wisconsin as an insolvent law. (*Holton* v. *Burton*, 78 Wis. 321; *Hempsted* v. *Ins. Co.*, Id. 375). This court had occasion in the case of *Boese* v. *King* (78 N. Y. 471), to consider a similar provision in a statute of New Jersey, regulating voluntary assignments for the benefit of creditors in that state, and it was assumed that the provision in that act was in the nature of a bankrupt law. Effect cannot be given here to this coercive feature in the Wisconsin law, except by giving extra-territorial effect to the law of that state. The assignor had no power to make such a condition, and if it is legal it is by force of the statute alone. This feature is one of the distinguishing tests of an insolvent or bankrupt law. The assignment was voluntary in the sense that the Wilkin Manufacturing Company were not coerced into executing it, and the title to the property was vested in the assignee by its own act. But, whether it is to be treated as voluntary in another jurisdiction when the claims of creditors there are in question, is the point. The assignment purports to have been made under and in pursuance of the law of Wisconsin. The assignor, by proceeding under that law, presumably designed to avail itself of the provision for a dis-

charge. This could only be accomplished by force of the law. The right of an insolvent or bankrupt to initiate voluntary proceedings in bankruptcy is a common feature in bankrupt laws, but that fact does not make the assignment voluntary, so as to give extra-territorial operation to the proceedings. This point was adverted to in the case of *Upton* v. *Hubbard* (28 Conn. 274), where the court said: " In our view there is essentially no difference whether, in consequence of an act of bankruptcy, as in England, the bankrupt's estate is forced from him, or he himself sets the law in motion by a convey-ance in bankruptcy in the first instance." Under the Wis-consin statute the transfer is voluntary, but the law steps in and regulates the distribution of the assigned estate in accordance with conditions which the sovereign alone can prescribe. It would, we think, be disregarding the substance to hold that the voluntary feature of the law distinguishes it from the class of bankrupt or insolvent statutes which, by gen-eral consent in this country, are held to be ineffectual to trans-fer the title of the insolvent to property in another state, as against attaching creditors there.

It is insisted, however, in behalf of the plaintiff that, assum-ing that the title of the assignee would be subordinate to the lien of attachments, issued here at the suit of resident creditors, this priority cannot be claimed in behalf of Wisconsin creditors who, knowing of the assignment, seek to gain a pref-erence under our attachment laws, and that the banks to whom the claims were assigned after maturity, and who took with notice of the assignment, stand in no better position than the original creditors. In some of the states, which refuse to recognize the validity of the title of a foreign assignee, even in case of voluntary assignment, where it comes in conflict with the claims of domestic creditors, a distinction is made, and it is held that where the domicile of the foreign assignee and the creditor is the same, the latter will be bound by the title of the former, good by the law of the common domicile. (*May* v. *Wannemacher*, 111 Mass. 202; *Sanderson* v. *Brad-ford*, 10 N. H. 260; *Moore* v. *Bonnell*, 2 Vroom, 90.) The
*Bacon v. Horne, 123 Pa. 452*

principle of comity in these states is held to apply so as to subject non-residents to the operation of the foreign law, but not so as to prevent domestic creditors from pursuing their remedy in defiance of the foreign assignment. (*Faulkner* v. *Hyman*, 142 Mass. 53.)

The question is not an open one in this state. We have refused to adopt the distinction made in some of the states, and have placed the right of a creditor coming here from the state of the common domicile upon the same footing as that of a citizen or resident creditor, and have sustained the lien of an attachment issued here at the instance of a foreign creditor after proceedings in insolvency had been instituted in the state of the common domicile of the insolvent and creditor. (*Hibernia Natl. Bank* v. *Lacombe*, 84 N. Y. 367.) There the debtor and attaching creditor were Louisiana corporations. The attachment was issued after the debtor bank had been placed in liquidation under the laws of that state and commissioners had been appointed to take possession of and administer its assets. DANFORTH, J., after stating the general rule that the law of Louisiana could have no operation here, referring to the point now under consideration, said: "The plaintiff, as we have seen, although a foreign creditor, is rightfully in our courts pursuing a remedy given by our statutes. It may enforce that remedy to the same extent, and in the same manner, and with the same priority, as a citizen. Once properly in court and accepted as a suitor, neither the law nor court administering the law will admit any distinction between the citizen of its own state and that of another." How far our courts will enforce the title of a foreign assignee in bankruptcy as between the assignee and the bankrupt or his creditors, where all the parties have a common domicile abroad, was much discussed in the case of *Abraham* v. *Plestoro* (3 Wend. 548), and that case, with others, were reviewed in the case of *In re Waite* (*supra*). The authority of *Hibernia Bank* v. *Lacombe* upon the point now in question was expressly recognized and approved in *Warner* v. *Jaffray* (96 N. Y. 248), and it must be regarded as establish-

ing the law of the state on the subject. In *Warner* v. *Jaffray* the court refused to interfere with liens acquired by citizens of this state upon personal property in another state under the laws of that state, belonging to an insolvent resident here, under proceedings commenced after a voluntary assignment for the benefit of creditors, valid by the laws of this state, had been made and delivered. It was in substance held that creditors of the assignor, citizens of this state, were not, because of such citizenship, precluded from taking proceedings in another state hostile to the assignment, for the purpose of acquiring priority in respect of personal property situated there embraced in the assignment. (See, also, *Johnson* v. *Hunt, supra.*) The courts of this state accord to our citizens the same liberty to proceed in another jurisdiction in hostility to assignments executed here which they accord to citizens of other states coming here and instituting proceedings in hostility to transfers in insolvency, valid by the laws of their domicile. The rule in New York on the question is also the rule in other states. (*McClure* v. *Campbell*, 71 Wis. 350; *Rhawn* v. *Pearce*, 110 Ill. 350; *Boston Iron Works* v. *Boston Locomotive Works*, 51 Me. 585; *Upton* v. *Hubbard, supra.*) It follows, therefore, that the attachments in question created valid liens on the debt attached in priority to the title under the assignment, assuming the claim of the plaintiff that the banks stood in no better position than the Wisconsin creditors.

The point that the provisions in the Wisconsin statute providing for a discharge of insolvent debtors apply to natural persons only, and not to corporations, is opposed to the statutory construction of the word "person," as defined in the Revised Statutes of that state, and there is nothing in the charter of the corporation, so far as appears, or in the statutes of Wisconsin, which takes from this corporation the general powers which, in the absence of any statutory or charter restriction, belong to corporations to make an assignment in insolvency. (*DeRuyter* v. *St. Peter's Church*, 3 N. Y. 238.) This judgment is not, we think, in accord with the law of this

state, and must, therefore, be reversed.    The case was argued at our bar with great ability, and the researches of the several counsel have materially lightened the labors of the court.

The judgment should be reversed and a new trial granted. All concur.

Judgment reversed.