The facts are stated in the opinion by WOODSIDE, J., of the court below, as follows:
This comes before us on exceptions filed by the Superintendent of Insurance of New York as primary receiver of Consolidated Indemnity and Insurance Company and by others to the report of the Insurance Commissioner of Pennsylvania as ancillary receiver of the aforesaid insolvent insurance company. *Page 562 
On May 10, 1934, the Supreme Court of the State of New York directed the Superintendent of Insurance of that State to take possession of the property of Consolidated Indemnity and Insurance Company, a New York corporation, and appointed him as primary receiver or "liquidator", according to the term used in that State.
The following day this Court appointed Charles H. Graff, the acting Insurance Commissioner of the Commonwealth of Pennsylvania as "ancillary receiver of Consolidated Indemnity and Insurance Company to assist the Superintedent of Insurance of the State of New York," and the District Court of the United States for the Eastern District of Pennsylvania also appointed ancillary receivers for the same company.
The principal asset in Pennsylvania was a deposit of municipal bonds made by the insolvent with the city of Philadelphia in connection with certain contractors' bonds. It was necessary to await the running of the Statute of Limitations to determine whether there were any claims against those bonds by the city of Philadelphia. When it developed that there were no claims the city of Philadelphia released the bonds which it held. They were turned over to the receivers appointed by the United States District Court, who determined that they ought to be paid over to the Insurance Commissioner of Pennsylvania for disposition by him as the ancillary receiver in this Commonwealth. That was done, and on or about August 13, 1943, the District Court receivers turned over all their assets to the present Commissioner of the Commonwealth of Pennsylvania who now has in his possession $114,817.75.
The Insurance Commissioner of Pennsylvania duly filed his report in this Court and this Court confirmed the account and authorized him to pay over the balance to the Superintendent of Insurance of the State of New York as primary receiver. *Page 563 
Subsequently, several creditors claiming to reside in Pennsylvania, appeared and on January 3, 1946 this Court revoked its order, referring the matter back to the Pennsylvania Insurance Department for the purpose of determining the amounts of Pennsylvania claims. Accordingly, the Insurance Commissioner of Pennsylvania held hearings at which a small number of creditors appeared.
At the hearing, it appeared that the Superintendent of Insurance of the State of New York had given notice to all creditors everywhere of which he had any knowledge. Creditors had been permitted to prove their claims, either in New York or before the Insurance Commissioner of Pennsylvania. All this occurred shortly after the receivership in 1934 and the total amount of claims everywhere was adjudicated in New York to the satisfaction of all creditors.
Feeling that there was no object in re-adjudicating claims which had been already admitted by the Superintendent of Insurance of New York, the Insurance Commissioner of Pennsylvania adopted the adjudication of all Pennsylvania creditors which had previously been made in New York. Each creditor, however, was required to supply a certificate stating that he actually lived in Pennsylvania at the time of the receivership.
The Insurance Commissioner, through his deputy, collected evidence of these claims, all of which were accepted on the basis of the adjudication of them in New York except those of Melville Storage Company and Thomas K. Joyce, which had not been proved in New York.
The order of this Court of January 3, 1946, directed that attention be given only to Pennsylvania claims and accordingly, no other claims were solicited and none is given any recognition by the Pennsylvania Insurance Commissioner. *Page 564 
The Superintendent of Insurance of the State of New York presented a claim at these proceedings, asking that the entire fund be awarded to him for distribution to all creditors everywhere on a ratable basis. In the event this position were denied, he asked that dividends paid to Pennsylvania creditors out of New York assets and his expense of adjudicating Pennsylvania claims be reimbursed to him.
It appears that if Pennsylvania creditors are given the entire fund, they will receive a larger dividend (approximately fifty per cent) than they would if all the assets everywhere were distributed ratably among all the creditors everywhere.
In the interval since May 1934, when the primary receivership in New York commenced, the New York liquidator has collected assets in large amounts from many states and has made distribution ratably to all of the creditors everywhere, including the Pennsylvania creditors. There have been three dividends and all of the Pennsylvania creditors have received their proper dividends, except the two referred to whose claims were not proved in New York.
The New York liquidator required all claimants to execute general releases releasing the New York liquidator and the estate of the defunct indemnity company from all liability as a condition of the recognition of their claims in the amount finally agreed upon. All of these creditors executed such releases where their claims were recognized in New York and where dividends were paid.
The New York liquidator claimed the entire fund for general distribution, giving two reasons — first, that no creditors should be given preference merely because they happen to live in Pennsylvania, and, secondly, that all the creditors involved, except two, had given general releases which barred them from presenting their claims anywhere except through the New York proceedings. *Page 565 
The Pennsylvania Commissioner filed his report on December 22, 1947, recommending that the assets which were located in Pennsylvania should be distributed, after the payment of a preferred claim of the Commonwealth, to individual creditors who lived within the Commonwealth of Pennsylvania at the time of receivership; that corporations were not entitled to this preference; and that the releases given were no bar to this distribution. Since there is not enough to satisfy the so-called Pennsylvania claimants in full, as determined on this theory, the entire fund was recommended for awarding to them, subject however to paying to the New York liquidator the amount of the dividends on these claims which he has already paid out of assets obtained from places other than Pennsylvania, and subject also to the reimbursement of the New York liquidator for the expense he incurred in adjudicating the Pennsylvania claims in the first place.
The New York liquidator took exceptions to the amended report of the Pennsylvania Insurance Commissioner as ancillary receiver and the matter comes before us on the exceptions filed by him and by others raising different questions. We shall deal first with the question raised by the New York liquidator. Disposing of that as we do makes it unnecessary for us to consider the others.
 Question.
Where assets of an insolvent insurance company for which a primary receiver has been appointed in the state of New York are held by an ancillary receiver in Pennsylvania after having been received by him because they were in this State when the company was declared insolvent, should such assets be distributed to unsecured creditors residing in Pennsylvania to the exclusion of all other creditors of the insolvent insurance company, or should such assets be turned over to the primary *Page 566 
liquidator, when this court is satisfied that the primary liquidator will make distribution of all the assets wherever obtained ratably to all of the creditors everywhere?
This involves an important question of policy and its determination will have far reaching consequences which we shall consider later in this opinion.
Although there are many occasions where the assets of an insolvent are distributed among creditors it has never become the policy of this State to give preferential treatment to Pennsylvania creditors in the distribution of the funds.
There is no preference to Pennsylvania creditors in the distribution of insolvent estates of Pennsylvania decedents. See the Fiduciaries Act of June 7, 1917, P. L. 447, Sec. 13a (20 PS 501). Neither is there any preference to Pennsylvania creditors in the distribution of the assets of insolvent banks, or building and loan associations. See Act of May 15, 1933, P. L. 565, Sec. 1011 as amended (71 PS 733-1011). In the case of an assignment for the benefit of creditors under the Pennsylvania insolvency statute there is a provision for uniform distribution of assets to creditors. See Act of June 4, 1901, P. L. 404, Sec. 3 (39 PS 1). The insurance code does not provide for any preference for Pennsylvania creditors. See Act of May 17, 1921, P. L. 789, Sec. 510, (40 PS 210).
In Restatement, Conflict of Laws, Sec. 554, the rule is set forth as follows: "Subject to valid claims against or liens on specific funds and to preferences given to creditors of a particular class, all creditors of an estate who have proved their claims in a competent court in which there are receivership proceedings are entitled to share pro rata in any application of the assets of the local receiver to the payment of claims, irrespective of the source of such assets, or of the residence, place of business, domicil, or citizenship of the creditors." *Page 567 
So far as we know the precise question now before us has never been raised in Pennsylvania, although it has been the practice of the Insurance Commissioner with the approval of this court to surrender to the primary receiver of another state, funds of an insolvent insurance company found in Pennsylvania and held by him as ancillary receiver, and to collect from ancillary receivers in other states, funds found in their hands when he (the Pennsylvania Insurance Commissioner) is the primary receiver.
In the case of Commonwealth of Pennsylvania ex rel. WilliamA. Schnader, Attorney General, v. Southern Surety Company ofNew York, No. 170 Commonwealth Docket, 1932, this court through the late President Judge HARGEST in August 1947, upon recommendation of the Insurance Commissioner of Pennsylvania acting as ancillary receiver of said company, entered an order authorizing and directing the payment of nearly $100,000 in the hands of the ancillary receiver to the Superintendent of Insurance of the State of New York as liquidator of the company.
In Commonwealth of Pennsylvania ex rel. William A. Schnader,Attorney General, v. General Indemnity Corporation of America, No. 222 Commonwealth Docket, 1933, this court, through the late Judge FOX on November 28, 1934, at the suggestion of the ancillary receiver, directed that all property and assets in his possession as said receiver should be delivered to the Superintendent of Insurance of the State of New York as primary receiver.
Again, in the case against Lloyds Insurance Co. of America, No. 221 Commonwealth Docket, 1933, this Court, through the late Judge WICKERSHAM on February 19, 1934, upon motion of the Attorney General approved a contract between the Insurance Commissioner of the Commonwealth of Pennsylvania as ancillary receiver *Page 568 
and the Superintendent of Insurance of the State of New York as liquidator under the terms of which the assets of the company in Pennsylvania were turned over by the ancillary receiver to the New York liquidator "for general distribution to all general claimants of the company whose claims (were) allowed by a court of competent jurisdiction regardless of the residence of such claimants or of the place wherein such claims arose, including all claims certified to said liquidator by the Pennsylvania receiver which remain unpaid."
In the case of Commonwealth of Pennsylvania ex rel. T. McKeenChidsey, Attorney General, v. Keystone Mutual Casualty Company, No. 129 Commonwealth Docket, 1947, the company is a Pennsylvania corporation and the Insurance Commissioner of Pennsylvania is thus the primary receiver. During the liquidation of this company the Insurance Commissioner of Pennsylvania has collected a substantial sum from ancillary receivers in other states and proposes to make distribution of all the assets ratably to all creditors regardless of residence.
Admittedly the question here before us had not been specifically presented to this court in any of the above cases, but so far as we have been able to determine, the practice outlined above has been followed by both the Insurance Commissioners and this court without exception since 1903.
That year the Supreme Court decided in the case ofFrowert v. Blank, 205 Pa. 299 that an ancillary receiver who had acquired funds in this State of an insolvent New York corporation should distribute them to Pennsylvania creditors in preference to the claim of the primary receiver appointed in New York.
In that case the Court said: "This rule [that a receiver's powers are circumscribed by the territorial limits of the jurisdiction that created him] has been *Page 569 
relaxed . . . so as to permit a receiver on the principle of comity to exercise in another state the functions vested in him by his appointment, but this is permitted only where it will not violate public policy or infringe or defeat the rights of domestic creditors."
There was good reason for the holding in Frowert v. Blank. It was the belief of our Supreme Court that the State of New York would prefer New York creditors to Pennsylvania creditors under which circumstances the rights of the creditors of this state would be defeated by permitting the funds to go to New York for distribution.
Justice MESTREZAT said at page 303, "New York, the State whose receiver asks that this fund be transferred to its jurisdiction as against the citizens of this state who are creditors of the New York corporation, has declared by her highest court that she will permit a foreign receiver to sue in her courts only where the claim does not conflict with the rights of citizens of that state: Willitts v. Waite, 25 N.Y. 577; Peterson v. Chemical Bank (N.Y.) 83 Am. Dec. 298."
It has been argued that the Supreme Court of this State was in error in its interpretation of the case of Willitts v.Waite, supra, and that the auditor's report erroneously advised the court in the Frowert case that "the rule (that domestic creditors were to be paid in full out of a fund in the hands of the ancillary receiver before it can be transmitted to the jurisdiction of the domicile of the debtor) is the same in New York as it is in Pennsylvania."
The New York Court of Appeals in the case of Matter of People(Norske Lloyd Insurance Company), 242 N.Y. 148 (1926),151 N.E. 159, states as follows: "Willitts v. Waite (25 N.Y. 577) simply held that creditors within this State having acquired a lien under our laws upon property of a foreign insolvent corporation *Page 570 
within the State, would not on the demand of foreign receivers be sent to a foreign State to seek such portion of the insolvent estate as the laws of that State would upon distribution give them. No question was involved of the duties of an ancillary receiver appointed in this State of property upon which local creditors had no specific lien or claim to transmit funds to the primary receiver for distribution."
Whether the fears of our Supreme Court concerning the treatment of Pennsylvania creditors by the New York Liquidator were justified in 1903 or not, it is clear that today no such fears are justified.
The New York law on this point is clearly set forth inMatter of People (Norske Lloyd Insurance Company) supra, as follows; (page 163): "By these views in reference to the statute we are brought to the proposition, upon which respondents must rely for affirmance of so much of the order appealed from as provides for payment to the second class of policyholders, that there is some principle of equity, comity or public policy which authorizes the application of the funds in the hands of the Superintendent to payment in full of local creditors before transmission of any surplus to the primary or domiciliary receiver. We know of no such principle which, under the circumstances of this case, is recognized by our courts. The present question is not one between a foreign receiver and local creditors who have acquired a specific lien by attachment or otherwise. It is a question of the duty of a conceded ancillary receiver who has come into possession of the insolvent's property before any lien was acquired thereon by creditors. The word "ancillary" defines a receiver who has been appointed in aid of and in subordination to a foreign receiver for the purpose of collecting and taking charge of the assets of the insolvent corporation in the jurisdiction where he is appointed. *Page 571 
This conception of such a receiver indicates that he will act in aid of the primary receivership and not to the end of thwarting its purposes. The ordinary rule of distribution of the assets of an insolvent is equality amongst creditors of the same class and this rule requires, subject to the consideration hereinafter discussed, transmission of the funds in the hands of the Superintendent as ancillary receiver and not subject to any particular claim or lien as hereinbefore discussed, to the primary receiver for distribution pro rata amongst the creditors of the Insurance Company. (Blake v. McClung,172 U.S. 239; Central, etc., Co. v. Farmers, etc., Co., 113 Fed. Rep. 405; affd., 125 Fed. Rep. 1001.) Such is the disposition which, as matter of fact, has been required by our courts under identical or analogous circumstances, by decisions which are controlling in this proceeding."
and at page 166: "No authorities of course could be cited from other jurisdictions which would be accepted as overruling our own decisions on this question. With possibly one exception no authorities either of text books or decisions are cited which do contradict the rule that it is the duty of an ancillary receiver in possession of property of a foreign corporation, subject to no specific lien or claim either by statute or process, to transmit that property under safeguarding regulations if necessary to the primary receiver for equitable distribution amongst all the creditors rather than to apply it first in full payment of local creditors."
then at page 167: "If the case of Frowert v. Blank (205 Penn. St. 299, 304) is to be regarded as laying down any different rule as prevailing in the State of Pennsylvania we decline to follow its views."
In the case before us the New York liquidator has offered testimony that if this fund is sent to New York there will be equal distribution among all creditors residing *Page 572 
everywhere including of course Pennsylvania creditors. Indeed Pennsylvania creditors have already received their pro rata share of funds collected in New York and elsewhere. Under these circumstances public policy does not require us to "prefer" Pennsylvania creditors. If in referring to the "rights" of Pennsylvania creditors in the Frowert case, supra, our Supreme Court meant, as we think it did, their just, equitable and equal share, then such rights are protected by giving the funds to the primary receiver.
It is to be noted that this is not a contest between a foreign receiver and a local creditor who has obtained a lien by foreign attachment or otherwise. In the case where a local creditor has obtained a lien by foreign attachment issued after the appointment of a primary receiver in a foreign state the lien creditor is entitled to priority over the foreign receiver: Smith v. Electric Machinery Co., 83 Pa. Super. 143
(1924) and Nazareth Cement Co. v. Union Indemnity Co.,116 Pa. Super. 506 (1935).
It is interesting to note however that in the latter case Judge STADTFELD said, at page 513: "It must be conceded that if the facts were reversed and a Louisiana creditor in Louisiana were trying to collect his claim out of the assets of a Pennsylvania insurance company in Louisiana, the Louisiana courts would see that he got it. No rule of comity requires that Pennsylvania courts should direct that assets in Pennsylvania should be turned over to the receivers of a Louisiana corporation. It might be so if Louisiana would do thesame thing." (Emphasis supplied.)
Neither is this a case where creditors are claiming a fund put up in this State to protect them. If the fund before us for distribution were in this state for the purpose of protecting all Pennsylvania creditors of course Pennsylvania creditors would be preferred to *Page 573 
the New York receiver. But such is not the case. The fund was here for another purpose.
If we were to award the funds in this case to Pennsylvania creditors in preference to the New York liquidator we would be expanding the rule laid down in the Frowert case, supra, from the situation where it appears to the court that the Pennsylvania creditors would not be justly treated by the New York liquidator to the case where it appears to the court that the Pennsylvania creditors will be justly treated by the New York liquidator.
The rule providing that local creditors should be given preference over all other creditors should not be expanded or extended. It will only build new barriers between states — barriers built with planks of inequality. Government in all its branches has been attempting in many ways to destroy this type of barrier. The Legislatures attempt it through reciprocal and uniform state laws, and by the work of the Council of State Government. The administrative branches of state governments attempt it through the conferences of Governors, of Insurance Commissioners, of Highway Officials, of Tax Secretaries and Commissioners, and many others. Even the judicial branch, by continued expansion of the meaning of interstate commerce, and in other ways, is opening gates through state barriers.
The desirable features of individual state sovereignty can best be maintained in this country by avoiding the unnecessary and unreasonable consequences of such sovereignty.
The holding of the Supreme Court of the United States inUnited States v. South-Eastern Underwriters Association, etal., 322 U.S. 533 (1944) that insurance is commerce has opened the door to federal regulation and control of insurance. The prevailing opinion however is that the control and regulation of insurance should remain with the states. To adopt rules of preference *Page 574 
which result in favoritism and inequality based solely on the residence of the claimant and locus of the fund would indicate the inability of the states to deal equitably with the problems of insurance.
It is not necessary nor reasonable to hold that Pennsylvania creditors should receive a larger share in this case than the creditors of other states merely because a relatively large amount of the funds and a relatively small number of the creditors of the insolvent company were within the borders of this State at the time of insolvency. In the next case of an insolvent insurance company there may be little or no funds in this State and Pennsylvania creditors might receive far less than creditors of the insolvent company living in other states.
Were we to distribute this fund to Pennsylvania creditors, other states may be expected to follow a similar rule in dealing with insolvent Pennsylvania insurance companies. And what will be even more detrimental to Pennsylvania citizens in the future, those states which hold large assets of insolvent insurance companies can be expected to apply the same rule and pay the common creditors of their state before distributing anything to the creditors of this State. In the long run Pennsylvania would not find it advantageous to have such a rule of law universally applied.
On behalf of some of the Pennsylvania creditors it has been contended that the question we have here dealt with is res judicata because the Federal Court refused to direct payment of the funds in its hand to the primary receiver in New York and instead ordered payment to the ancillary receiver in Pennsylvania. This the Federal Court did in order that distribution could be made by the Pennsylvania receiver in accordance with the laws of this State. Transfer of the fund to the New York liquidator is under the rules of comity, which is a matter for the Courts of Pennsylvania and not for *Page 575 
the Federal Courts to determine. The Federal Court did not pass on how the Pennsylvania Receiver should make distribution nor does the order of that Court prevent payment to the New York liquidator by order of the Courts of this Commonwealth.
The claim of the Commonwealth in the amount of $7,732.71, without interest, was allowed as a preferred claim by the ancillary receiver. No exception has been taken to this and it is agreed by all that this claim was properly allowed.
The balance, we think, should be paid to the New York liquidator for distribution to all creditors, including Pennsylvania residents who have proven their claims either before the New York liquidator or the ancillary receiver in Pennsylvania. There will thus be included the two Pennsylvania creditors whose claims although not previously allowed by the New York liquidator were allowed by the ancillary receiver.
Commonwealth appealed.
The decree is affirmed, at the appellant's costs, on the opinion of Judge WOODSIDE for the court below. *Page 576