Stopper *v.* Chesapeake Insurance Company,
Appellant.

Argued December 14, 1966.   Before ERVIN, P. J., WRIGHT, WATKINS, MONTGOMERY, JACOBS, HOFFMAN, and SPAULDING, JJ.

*Thomas F. Wilson,* with him *William G. Giltinan* and *Edward P. Clayman,* for appellant.

*Sidney H. Black,* with him *James A. Burgess, Jr.,* for appellee.

OPINION BY HOFFMAN, J., March 23, 1967:

In January of 1965, appellee, Anne Stopper, suffered serious injuries when her automobile was struck by an uninsured vehicle. Shortly thereafter, she instituted suit against her own insurer, the Chesapeake Insurance Company, under the uninsured motorist coverage provided by its policy.   See Act of August 14, 1963, P. L. 909, §1, 40 P.S. §2000.

An arbitrator awarded $2815 to Mrs. Stopper.   On October 15, 1965, judgment was formally entered in her favor against Chesapeake.   On October 18, 1965, she levied and attached certain of Chesapeake's accounts receivable in this Commonwealth.

Subsequently, on November 12, 1965, Chesapeake was declared insolvent in Maryland, the state of its domicile.   The Circuit Court of the City of Baltimore named Francis Burch, Maryland Insurance Commis-

sioner, as statutory receiver, with directions to liquidate the corporation.[1]

On March 31, 1966, Commissioner Burch filed a petition in the County Court of Philadelphia to Strike Off appellee's judgment. That court dismissed the petition and the Insurance Commissioner appeals.

Appellant's contention that the judgment before us must be stricken is without merit. Ordinarily, a judgment will not be stricken except for lack of jurisdiction or other fatal defect apparent on the face of the record. See, e.g., *Kros v. Bacall Textile Corporation*, 386 Pa. 360, 126 A. 2d 421 (1956). On this appeal, the Insurance Commissioner has abandoned all formal challenges to the regularity of the arbitration proceeding. Moreover, he does not dispute that Chesapeake entered an appearance and conducted a vigorous defense before the arbitrator. Consequently, the judgment under attack is founded on valid in personam jurisdiction over the insurer.

Appellant relies solely on the full faith and credit clause of the U. S. Constitution. Before this Court, he argues that Maryland law forbids the commencement or prosecution of any suit against an insurance company during the pendency of "delinquency proceedings" against it—in this case, after the appointment of a rehabilitator on June 18, 1965. But, even assuming that our courts would be bound by a direction of that sort, we are referred to no Maryland statute or case which, in terms, requires such judicial abstention.[2]

---

[1] The order of liquidation superseded a previous consent decree, entered on June 8, 1965, placing the company in the hands of a "rehabilitator." Uniform Insurers Liquidation Act, Md. Code Annot. (1957), Article 48A, §§141, 145.

[2] Section 135 of the Uniform Insurers Liquidation Act, Md. Code Annot. (1957), Article 48A, does provide: "The court may at any time during a proceeding under this subtitle issue such injunctions or orders as may be deemed necessary to prevent . . .

Maryland law specifically forbids only the *satisfaction* of a judgment against the insurer through attachment execution during the pendency of "delinquency proceedings." It does not forbid the entry of judgment itself. See Uniform Insurers Liquidation Act, supra, §151. Maryland law also purports to void liens acquired against the insurer within four months prior to the commencement of delinquency proceedings. Of course, the mere entry of judgment could create no lien against Chesapeake's accounts receivable or any of its intangibles in Pennsylvania. See Act of July 3, 1947, P. L. 1234, §2, 12 P.S. §878.

Since the courts of Maryland would not have voided this judgment, had it been entered in that State, our courts should not be compelled to do so. The refusal of the court below to strike off the judgment must therefore be sustained. The significant question raised by the facts of this case, however, is not whether the judgment should be stricken but whether the subsequent attachment should be dissolved. Although the petition in the lower court raised this contention only parenthetically, we shall consider the question as if properly before us.

In *Arroyo v. Chesapeake Insurance Company*, 209 Pa. Superior Ct. 174, 224 A. 2d 101 (1966), we held that the statutory liquidator of an insolvent foreign insurance company may not be subjected in the courts of Pennsylvania to liens acquired here after his appointment. Appellant's reliance on that decision, however, is misplaced. The present attachment was obtained on October 18, 1965, nearly a month *before* the appellant Insurance Commissioner was appointed statutory liquidator on November 12, 1965. That appointment, the adjudication of insolvency, and the entry of

the commencement or prosecution of any actions, or the obtaining of . . . judgments . . . against the insurer. . . ." But no such order appears in the record before us.

an order of liquidation all occurred *after* the garnishment of Chesapeake's accounts in this Commonwealth. For these reasons, the *Arroyo* decision on its facts, is not controlling here.

Appellant further argues that his appointment as "rehabilitator" of Chesapeake on June 18, 1965 should bar a subsequent attachment of the company's assets in Pennsylvania.

An understanding of the rationale of *Arroyo* disposes of this contention. That case announced a rule of nondiscrimination, compelled by the United States Constitution. See *Clark v. Williard*, 294 U.S. 211 (1935); Restatement 2d, Conflict of Laws, §546a (Tentative Draft No. 11, 1965). In *Arroyo*, we said: "[Pennsylvania] may not . . . work a forbidden discrimination between corporations organized within and without its boundaries. . . . '[F]ull faith and credit requires . . . that a statutory successor appointed in a sister State be given the same rights as a local statutory successor would have.' " (p. 177).

In short, the Constitution requires that the liquidators of insolvent foreign and domestic insurers be accorded substantially similar protection in our courts against attaching creditors. In a contest such as this one, however, we are not bound by the whole body of regulatory law governing insurance companies in Maryland.

Thus, we acknowledge that, under Maryland law, the appointment of a "rehabilitator" for the Chesapeake Company on June 18, 1965, barred any subsequent attachment against Chesapeake's assets in that state. Uniform Insurers Liquidation Act, Md. Code Annot. (1957), Article 48A, §151.

Pennsylvania law, however, knows no equivalent of a statutory "rehabilitation" proceeding. In our Commonwealth, it is the suspension from further transaction of business, with notice to all creditors, generally

followed by appointment of a statutory liquidator, which prevents attachment of a domestic insurer's assets. The Insurance Department Act of May 17, 1921, P. L. 789, §502, as amended, 40 P.S. §202. When Chesapeake's "rehabilitator" was appointed on June 8, 1965, on the other hand, the consent order empowered him to conduct the company's business in the succeeding months, with a view "toward the removal of the causes and conditions which have made rehabilitation necessary. . . ." Moreover, the order specifically authorized Chesapeake to continue to write insurance within and without the State of Maryland. Finally, it provided for no notice whatever to creditors and policyholders that "delinquency proceedings" had begun.

We conclude that appellant's appointment as statutory liquidator for Chesapeake on November 12, 1965 (and not the earlier appointment of a "rehabilitator") most nearly approximates the event under our statute which bars attachments against insolvent Pennsylvania insurers. Only on November 12 did Chesapeake cease all transaction of business. On that date it was adjudicated insolvent and on that date an order of liquidation was entered against the company in Maryland.

Consequently, the Constitutional mandate of *Clark v. Williard,* supra, and the rule announced in *Arroyo v. Chesapeake Insurance Co.,* supra, require only that appellant be protected against attachments levied here after November 12, 1965. In refusing to dissolve the present attachment, issued nearly a month before that date, we accord substantially similar protection to both foreign and domestic receivers. Absent a constitutionally forbidden discrimination, we are not compelled, as the appellant contends, to defer to the special statutes of the State of Maryland. *Clark v. Williard,* supra.

This result is, in fact, consistent with Pennsylvania's policy of avoiding preferences to local creditors where ratable distribution of a foreign insolvent's as-

sets can be made to all creditors wherever situated. *Arroyo v. Chesapeake Insurance Co.*, supra; *Commonwealth ex rel. Schnader v. Consolidated Indemnity and Insurance Co.*, 362 Pa. 561, 566, 67 A. 2d 434 (1949). When appellee Stopper levied the present attachment in October of 1965, it was not at all clear that Chesapeake's financial condition would require an order of liquidation. The need to assure a future prorata distribution of the company's assets was not so evident at that time as to make the perfection of a lien a manifest injustice to Chesapeake's other creditors. In this Commonwealth, an attachment which is valid when issued will not be retroactively invalidated by a later decree of insolvency. *Lewycka v. Springfield Mutual Insurance Co.*, 201 Pa. Superior Ct. 341, 191 A. 2d 925 (1963).

Had Pennsylvania adopted the Uniform Insurers Liquidation Act, we should reach an opposite conclusion in this case.[3] But our lawmakers have not yet done so, and we may not accomplish its enactment for them by judicial legislation. We hold, therefore, that the court below did not err in refusing to strike off appellee's judgment and in refusing to dissolve the later attachment.

Order affirmed.

---

Concurring Opinion by Montgomery, J.:

I readily agree with all that has been said in the majority opinion and with its decision to affirm the lower court in refusing to strike off the original judgment or to dissolve the attachment of appellant's funds in the hands of the garnishees. However, I hasten to

---

[3] The Uniform statute forbids attachment proceedings against an insurer, in the enacting State, which is in the process of "rehabilitation." That statutory protection applies, as well, to an insurer domiciled in any other enacting State.

point out that no judgment had been entered against those garnishees as was done in the case of *Lewycka v. Springfield Mutual Insurance Co.*, 201 Pa. Superior Ct. 341, 191 A. 2d 925 (1963), in which case we refused to invalidate the attachment proceeding because of a later decree of insolvency. For that reason I think our order should contain a direction that further proceedings in the attachment be stayed until a determination of claim preferences is made in the liquidation action being conducted by the Insurance Commissioner. I do not think such issue should be resolved by us in this appeal.

Section 151 of the Maryland Code Article 48A, provides that during the pendency of delinquency proceedings in Maryland or a reciprocal state no attachments or executions shall be commenced or maintained in the courts of that state against the delinquent insurer or its assets; and further, that liens obtained within four months prior to the commencement of such delinquency proceedings shall be void as against any rights arising therein. Although this may not apply to attachments in other states, we find a similar provision in the Pennsylvania Act of 1956, March 22, P. L. (1955) 1328, §2, 40 P.S. §202, "From the date of such suspension on the ground that the suspended organization is insolvent . . . no action at law or equity shall be commenced or prosecuted nor shall any judgment be entered against nor shall any execution or attachment be issued or *prosecuted* against the suspended company . . . or against its property, in any court of this Commonwealth: . . ." (Emphasis supplied.)

It thus appears that the policy of both Maryland and Pennsylvania is to prevent the attachment of funds belonging to a delinquent insurer during the pendency of liquidation proceedings. As previously pointed out the attachment had been completed in *Lewycka* before liquidation was ordered.

I therefore concur, with this qualification.